[No. 4821.]

JENKS v. STUMP.

1. **Animals—Cruelty—Humane Society—Police Power—Constitutional Law.**

In the exercise of the police power, the legislature may enact laws for the prevention of cruelty to animals, and designate officers charged with the execution thereof.—P. 284.

2. **Same—Due Process of Law.**

Where it is sought to deprive one of his property or to create a charge against it, he must have notice of the proceedings and be afforded an opportunity to be heard, or he will be deprived of his property without due process of law, in violation of the fourteenth amendment to the federal constitution and of § 25, art. 2, Colo. const.—P. 288.

3. **Same.**

Mills' Ann. Stats., §§ 111, 112, 114, which provide that any officer of the humane society may take charge of any abandoned or cruelly treated animals and provide the same with food and detain them until the expenses are paid, without restricting the power to cases of emergency and which fail to provide for any hearing to determine the facts, authorize the taking of property without due process of law and are in violation of the fourteenth amendment to the federal constitution and of art. 2, § 25, Colo. const.—P. 288.

*Appeal from the District Court of Fremont County.*
*Hon. M. S. Bailey, Judge.*

Action by William A. Stump against Effie A. Jenks. From a judgment for plaintiff, defendant appeals.        *Affirmed.*

Decision *en banc.*

Mr. GEO. F. DUNKLEE and Mr. O. E. JACKSON, for appellant.

Messrs. WALDO & DAWSON, for appellee.

Mr. JUSTICE CASWELL delivered the opinion of the court:

The appellee (as plaintiff below) brought a replevin suit in the district court of Fremont county to recover the possession of three cows from appellant (defendant below). Complaint in the usual form alleging ownership; that he was entitled to the possession of property wrongfully taken; demand for possession, and unlawful detention by defendant.

The defendant for answer alleges upon information and belief that the plaintiff was not in possession of the cows described in complaint at the time alleged, but the same were abandoned, neglected and cruelly treated, and ranging upon a barren range dividing the counties of Fremont and Teller. And the defendant further justifies under sections 111 and 112 of Mills' Annotated Statutes of Colorado, alleging that at the time she took said cattle she was empowered as officer and agent of the Colorado Humane Society to detain such animals until the expense of food, care and shelter was fully paid. That her seizure of said cattle at the time same were taken was made solely for the purpose of providing them with proper food, shelter and care, and to pre-

vent suffering and death of same from hunger, thirst and neglect; and she further alleges, that at the time of the seizure she did not know, and had no means of knowing, who were the owners of the cattle.

Plaintiff by his replication denies that the cattle were without food, shelter and care, or that they were suffering greatly, or otherwise, from any cause, and denies that the defendant found them in an abandoned, neglected and cruelly treated condition; and alleges that the cattle were on the range in the usual condition of range cattle, and that at that time, and at all times during the winter, he had provided, and was providing, food and shelter for all of his cattle on the range needing such food and shelter, and had men continually employed to gather all cattle which were in a suffering condition and provide for their wants; and plaintiff further submitted to the court the validity of the law under which defendant justified.

At the trial the plaintiff objected to the introduction of any testimony in support of the allegation of justification in defendant's answer, because the statute relied upon is in conflict with section 25, article 2, of the constitution of Colorado, and the fourteenth amendment to the constitution of the United States, in that it authorizes the taking of property without due process of law, and further claims the statute to be in conflict with section 25 of article 5, constitution of Colorado. The statutes which are discussed in connection with this case are as follows:

Section 111, Mills' Ann. Stats. "Any officer or agent of the State Humane Society may lawfully take charge of any animal found abandoned, neglected or cruelly treated, and shall thereupon give notice thereof to the owner, if known, and may care

and provide for such animal until the owner shall take charge of the same, and the expense of such care and provision shall be a charge against the owner of such animal, and collectible from such owner by said Humane Society in an action therefor.

Sec. 112. "When said Humane Society shall provide neglected and abandoned animals with proper food, shelter and care, it may detain such animals until the expense of such food, shelter and care is paid, and shall have a lien upon such animals therefor."

Sec. 114. "Any person or corporation entitled to a lien under any of the provisions of this act, may enforce the same by selling the animals and other personal property upon which such lien is given, at public auction, upon giving written notice to the owner, if he be known, of the time and place of such sale, at least five days previous thereto, and by posting three notices of the time and place of such sale in three public places within the county, at least five days previous thereto; and if the owner be not known, then such notice shall be posted at least ten days previous to such sale."

Counsel on both sides have been diligent in presenting authorities. While we allude to some of them, we think the questions presented have been practically settled by former decisions of this court. In the exercise of the police power of the state, the legislature may undoubtedly enact proper laws for the prevention of cruelty to animals. It may further designate agents or officers who may be charged with the execution of such laws. It is unnecessary, in this case, to determine whether the statute, as it now stands, is obnoxious to clause 23, section 25, article 5, of the constitution of Colorado.

The important question presented, and chiefly relied upon, in the argument, is whether the law as

it stands contravenes section 25, article 2, of the constitution of Colorado, and the fourteenth amendment to the constitution of the United States, in that it deprives plaintiff of his property and the possession thereof without due process of law. This phrase has been frequently discussed in this court, and many other courts have defined it in various ways. In *Davidson v. New Orleans*, 96 U. S. 97-104, the court says:

"There is wisdom, we think, in the ascertaining of the intent and application of such an important phrase (due process of law) in the federal constitution by the gradual process of judicial inclusion and exclusion, as the cases presented for decision shall require, with the reasoning upon which such decisions may be founded."

And further, in the same case, at page 107, Mr. Justice Bradley says:

"If a state, by its laws, should authorize private property to be taken for public use without compensation (except to prevent its falling into the hands of an enemy, or to prevent the spread of a conflagration, or in virtue of some other imminent necessity where the property itself is the cause of the public detriment), I think it would be depriving a man of his property without due process of law. * * * In judging what is due process of law, respect must be had to the cause and object of the taking, * * * and if found to be suitable or admissible in the special case, it will be adjudged to be 'due process of law'; but if found to be arbitrary, oppressive and unjust, it may be declared to be not 'due process of law.' "

*In re Lowrie*, 8 Colo. 513, the court says:

"It is pretty generally stated by those learned in the law, that 'due process of law' and 'law of the land,' although verbally different, express the same

thought and that the meaning is the same in every case."—Cooley's Const. Lim., 352-353; Story's Const., § 1943.

In the same case the court further says, quoting from *Dartmouth College v. Woodward,* 4th Wheat. 518:

"By the law of the land is most clearly intended the general law; a law which hears before it condemns; which proceeds upon inquiry and renders judgment only after trial. The meaning is that every citizen shall hold his life, his liberty, property and immunities under the protection of the general rules which govern society."

To the same effect is *Wadsworth v. U. P. R. R. Co.,* 18 Colo. 614. *In re Dolph,* 17 Colo. 35.: "Due process of law includes law in its regular course of administration through courts of justice."

In *Brown v. City of Denver,* 7 Colo. p. 311, this court, in discussing "due process of law" and its application, says:

"The doctrine of the authorities is that whenever it is sought to deprive a person of his property, or to create a charge against it, preliminary to, or which may be made the basis of taking it, the owner must have notice of the proceedings, and be afforded an opportunity to be heard as to the correctness of the assessment or charge. It matters not what the character of the proceeding may be, by virtue of which his property is to be taken, whether administrative, judicial, summary or otherwise; at some stage of it, and *before the property is taken or the charge becomes absolute against either the owner or his property,* an opportunity for the correction of wrongs and errors which may have been committed must be given. Otherwise the constitutional guaranties above cited are infringed."

The court, in the same case, further says:

"A valid assessment cannot be made under an invalid law or ordinance, and its constitutionality is to be tested, not by what has been done under it, but by what it authorizes to be done by virtue of its provisions."—*Stewart v. Palmer,* 74 N. Y. 183; *Thomas v. Gain,* 35 Mich. 155; *Davidson v. New Orleans,* 96 U. S. 97; *San Mateo v. S. P. R. R.,* 8 Sawyer 283.

In the latter case this court had under consideration the validity of a statute authorizing the construction of sidewalks; but it was held in that case, as in other cases, that an assessment of that character could be upheld as a police regulation, and the court was then discussing the police power of the state. Subsequently this theory of taxation was overruled *(Denver v. Knowles,* 17 Colo. 204); but such later decision in nowise detracts from the force of the argument of the court as to legislative enactments concerning the exercise of police powers.

In *Brophy v. Hyatt,* 10 Colo. 223, the court having under consideration the power of towns, incorporated under the statute, to declare what should be a nuisance, and to abate the same, etc., says: "The ordinance does not, strictly speaking, declare or work a forfeiture of impounded animals since it provides for the payment of the proceeds of the sale to the owner after deducting the cost of the proceeding." Conversely, it is true that a statute which does not provide for the payment of the balance to the owner after deducting the cost of the proceeding, does work a forfeiture. It is not a sufficient answer to this proposition to say that the balance of the proceeds of the sale of animals remaining after deducting the cost for keeping and the cost of the proceedings and sale, can be recovered by the owner in an action, because the constitutionality of the statute must be de-

termined by what it authorizes to be done by virtue of its provisions.—*Brown v. City of Denver, supra,* and cases cited; *Ames v. The People ex rel.,* 26 Colo. 83, 109.

Applying the foregoing well established principles to the case at bar, we find the statute seeks to clothe the Humane Society and its agents with extraordinary powers. By its terms the agent is the sole judge of whether an animal is neglected, abandoned or ill treated, and whether it has sufficient food, nourishment and shelter. The truth respecting the matter cannot avail, because the agent is clothed with power to take possession of the animals regardless of their condition. No tribunal or any hearing is provided to determine the facts. The agent may, in his discretion, take possession and create a charge which becomes a lien upon the property without notice or hearing. The owner may have no knowledge that his property is being taken; no provision is made for the payment of any residue over and above the charges of the agent and the expense of the sale to the owner, and such payment is not required by this law, and this is one of the tests of its constitutionality. There is no penalty for failure to return the proceeds of any sale to the owner, and the only redress is by an action to recover the same, and the party aggrieved must, himself, initiate the action to have his day in court.

We think such powers are inhibited by the constitution, and must hold that the statute is in contravention of article 2, section 25, of the constitution of Colorado, and the fourteenth amendment to the federal constitution; that it authorizes the taking of property without due process of law, and is not a valid exercise of the police power of the state.

Our attention is called to a line of decisions holding that legislation in the exercise of the police

power of the state has been upheld where it was provided that property might be destroyed without notice and without compensation to the owner, to prevent the spread of contagious disease, or in the case of a devastating fire and other exigencies. The rulings in such cases rest more upon the municipal right of self-protection and self-defense than the legal construction of provisions concerning due process of law. Such cases are not in point. In *Munn v. Corbin,* 8 Colo. App. 113, the court having under consideration the powers of a health commissioner to abate a nuisance, says:

"The right to abate public nuisances, whether we regard it as existing in the municipalities, or in the community, or in the land of the individual, is a common-law right, and is derived, in every instance of its exercise, from the same source—that of necessity. It is akin to the right of destroying property for the public safety, in case of the prevalence of a devastating fire or other controlling exigency. *But the necessity must be present to justify the exercise of the right,* and whether present or not, must be submitted to a jury under the guidance of a court."

The distinction in all such cases seems to be whether *public* necessity demands summary action, and when it does not, notice must be given to the owner of the property and an opportunity be given, before some competent tribunal, to determine the truth of the allegations in each case, before the same is taken and before any lien is created upon it, and before it can be sold. Many of these questions arise in connection with the right of killing animals; that is, in the manner provided in section 113 of the act under consideration. We do not construe that section, which is not before us, but the principles which control in such cases are analogous and applicable

to those involved herein.—8 Cyc. 1122, and cases cited.

It does not appear from the record that any public necessity existed, nor that the public safety was in any manner conserved by taking these animals from the range, or that any exigency existed which required them to be taken without a notice to the owner and a hearing to determine whether or not they were abandoned or neglected, nor does the statute purport to restrict the powers granted to cases of emergency.

At the trial there was a verdict for the plaintiff directed by the court and judgment thereon, based upon the ruling that the statute is unconstitutional.

We think the judgment is correct and it is affirmed.                                    *Affirmed.*

Decision *en banc,* all the justices concurring.