Hugh C. PORTER, Plaintiff–Appellant,

v.

Susan DiBLASIO, Dane County Humane Society, Paul W. Humphrey, and Dane County, Defendants–Appellees.

No. 95–2968.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 12, 1996.

Decided Aug. 14, 1996.

Steven J. Schooler (argued), P. Scott Hassett, Lawton & Cates, Madison, WI, for Hugh C. Porter.

Meg Vergeront (argued), Stafford, Rosenbaum, Rieser & Hansen, Madison, WI, John M. Moore, Stephen Ehlke (argued), Bell, Metzner, Gierhart & Moore, Madison, WI, for Susan DiBlasio, Dane County.

Brian E. Butler, Stafford, Rosenbaum, Rieser & Hansen, Madison, WI, for Dane County Humane Soc.

Richard Perkins, Office of the Atty. Gen., Wisconsin Dept. of Justice, Madison, WI, for Paul W. Humphrey.

Before POSNER, Chief Judge, and BAUER and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Dane County officials seized Hugh Porter's nine thoroughbred racehorses and charged the person caring for them with criminal neglect. Without giving Porter notice or an opportunity for a hearing, the Dane County Humane Society terminated Porter's ownership interest in the horses and vested ownership of the horses in itself. The Humane Society then transferred its ownership interest in the horses to new, adoptive owners in exchange for nominal sums. Porter filed an action under 42 U.S.C. § 1983 alleging, among other things, that the defendants terminated his property interest in the horses without due process of law in violation of the Fourteenth Amendment. The district court dismissed the case, finding that Porter's amended complaint failed to state a viable due process claim. It found that the defendants' deprivation of Porter's property interest was random and unauthorized and that Porter's due process rights were adequately protected by postdeprivation remedies at state law. We reverse on the ground that Porter's complaint states two viable procedural due process claims.

## I

Hugh Porter left his nine thoroughbred racehorses in the care of Susan Lulling at her farm in Dane County, Wisconsin, while he resided in Anchorage, Alaska. Lulling allegedly neglected the horses, and on October 15, 1992, Susan DiBlasio, a humane officer with the Dane County Humane Society,[1] and several deputies of the Dane County Sheriff's Department seized eleven horses located at Lulling's farm, including Porter's nine horses. Among other items seized were documents that demonstrated Porter's ownership of the nine horses, as well as his address and telephone number in Alaska.

Dane County officials did not notify Porter of the seizure. However, he learned of the seizure (presumably through Lulling), and he called DiBlasio the week following the seizure and demanded the return of his horses. DiBlasio told Porter that he would have to pay restitution within five days and take the horses to a different farm or they would be placed for adoption. On October 29, 1992, Lulling was charged with several counts of neglect relative to her treatment of the eleven horses. Porter was not charged.

Assistant Dane County District Attorney Paul Humphrey wrote two letters to Lulling's attorney informing Lulling that she was required to pay the boarding charges for the horses. The second letter, dated February 22, 1993, notified her that if she did not pay the $10,568.67 in boarding charges within five days "then under the statute, we will treat them as strays and deal with them accordingly. See Sec. 951.15(3), Stats." The county never attempted to directly notify Porter that it would treat his horses as strays.

Five days after the February 22 letter, the Humane Society terminated Porter's ownership rights in his horses,[2] vested ownership

---

1. Humane officers are vested "with the powers of police officers or constables within their counties or municipalities for the purpose of carrying out their duties." Wis Stat. § 58.07.

2. Porter did not specifically allege when the defendants actually terminated his property interest in the horses. A reasonable inference from the allegations in Porter's amended complaint is that

of the animals in itself, and began preparations for adopting the horses out. Porter was not provided notice of the impending termination nor was he provided an opportunity for a hearing to challenge the legality of the seizure or the reasonableness of the boarding charges.

Between March 5 and May 1, 1993, eight of Porter's horses were adopted from the Humane Society, with the adopters paying the Humane Society nominal sums.[3] The adopters included DiBlasio, DiBlasio's daughter, and the veterinarian who was to testify regarding the alleged neglect of the animals.

Porter filed suit under 42 U.S.C. § 1983 on April 14, 1995. He alleged that the defendants had deprived him of his property interest in the horses without due process of law. Porter also alleged that DiBlasio and Humphrey conspired to violate his right to due process. He alleged that pursuant to the conspiracy DiBlasio and Humphrey did not provide him notice, terminated his property interest without providing him an opportunity for a hearing, and adopted out the horses for nominal sums to DiBlasio and her family and friends. Porter further alleged that the defendants violated his right to substantive due process because the transfer of ownership of the horses for nominal sums was arbitrary and capricious and constituted a taking without just compensation in violation of the Fifth Amendment. Finally, Porter alleged that DiBlasio and the Humane Society were liable for conversion.

The various defendants filed different motions seeking to dispose of the case. Initially, Humphrey filed a motion under FED. R. CIV. P. 12(b)(6), arguing that Porter's complaint failed to state a viable due process claim. While that motion was pending, the

Humane Society and DiBlasio, in her capacity as an employee of the Humane Society, filed a motion under FED. R. CIV. P. 12(c) for judgment on the pleadings, also arguing that Porter's complaint failed to state a viable due process claim.

The district court granted Humphrey's motion to dismiss. It found that WIS. STAT. § 951.15(2),[4] which requires that an owner be notified of the seizure of his animals, and § 951.15(3),[5] which provides that if the owner or custodian does not redeem the animals within five days of the notice by paying the boarding charges the animals will be treated as strays, provided Porter all the predeprivation process that he was due. According to the district court, the defendants' termination of Porter's ownership rights without providing him notice was the type of "random and unauthorized" deprivation for which the state could not have been expected to provide additional predeprivation process. *See Parratt v. Taylor*, 451 U.S. 527, 541, 101 S.Ct. 1908, 1916, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Easter House v. Felder*, 910 F.2d 1387, 1396 (7th Cir.1990), *cert. denied*, 498 U.S. 1067, 111 S.Ct. 783, 112 L.Ed.2d 846 (1991). Because adequate postdeprivation remedies were available in the form of a claim for conversion and a right to request the return of seized property under WIS. STAT. § 968.20(1), the district court found that Porter had failed to state a viable due process claim.

Porter filed a motion for reconsideration, arguing that the district court had failed to consider the merits of his substantive due process claim based on the Takings Clause of the Fifth Amendment. The district court

---

the defendants terminated his property interest five days after the February 22 letter.

3. One of Porter's horses died while in the Humane Society's care prior to adoption.

4. Section 951.15(2) provides in relevant part:

Any law enforcement officer may remove, shelter and care for any animal found to be cruelly exposed to the weather, starved or denied adequate water, neglected [or] abandoned.... In all cases the owner, if known,

shall be immediately notified and such officer, or other person, having possession of the animal shall have a lien thereon for its care, keeping and medical attention and the expense of notice.

5. Section 951.15(3) provides:

If the owner or custodian is unknown and cannot with reasonable effort be ascertained, or does not within 5 days after notice redeem the animal by paying the expenses incurred, it may be treated as a stray and dealt with as such.

denied the motion, finding that Porter's fifth amendment rights had not been violated because the termination of Porter's ownership interest was the result of Porter's neglect in not taking prompt action to secure the return of the horses after they had been seized. The district court granted the Humane Society and DiBlasio's motion for judgment on the pleadings, reciting the same analysis it had used in its memorandum and order granting the motion to dismiss. The parties then stipulated to the entry of summary judgment in favor of Dane County and Di-Blasio, in her capacity as a Dane County employee, on the grounds set forth in the district court's decision to grant the motion for judgment on the pleadings.

## II

■ The first issue we must decide is what standard of review to apply in reviewing the district court's decisions. The defendants submitted, and the district court granted, two different types of dispositive motions. The issues appealed concern the viability of Porter's constitutional claims underlying his § 1983 lawsuit, and the district court conclusively decided those issues in ruling on Humphrey's motion to dismiss under Rule 12(b)(6). The district court simply recited the same analysis in ruling on the Rule 12(c) motion.

The appropriate standard of review is that which corresponds to the motion under which the district court conclusively resolved the issues appealed. It would make little sense for us to apply a standard of review corresponding to a motion the district court later granted if it disposed of the later motion on the basis of reasoning in an earlier order. Thus, because the district court actually resolved the relevant issues in deciding the motion to dismiss under Rule 12(b)(6), we believe our standard of review under Rule 12(b)(6) is also appropriate for our review of the disposition of the Rule 12(c) motion.

■ We review a district court's decision to grant a motion to dismiss under Rule 12(b)(6) *de novo*, accepting the well-pleaded allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff. *Travel All Over the World, Inc.*

*v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1429 (7th Cir.1996). A dismissal under Rule 12(b)(6) is proper only where the plaintiff can prove no set of facts that would entitle him to relief. *Id.* at 1429–30.

## III

Porter's § 1983 complaint alleges three constitutional violations. Only the alleged procedural due process violations state a claim upon which relief can be granted.

Procedural due process requires a two-step analysis. First, we consider whether the plaintiff was deprived of a constitutionally protected interest in life, liberty, or property. If he was, we then determine what process he was due with respect to that deprivation. *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428, 102 S.Ct. 1148, 1153–54, 71 L.Ed.2d 265 (1982); *Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir.1996). The parties do not dispute, and we certainly agree, that Porter's ownership interest in the nine horses is a protected property interest under the Fourteenth Amendment. *Accord DiCesare v. Stuart*, 12 F.3d 973, 978 (10th Cir.1993). The dispute in this case concerns what process Porter was due.

■ The presumption is that an individual is entitled to notice and an opportunity for a hearing prior to the state's permanent deprivation of his property interest. *Logan*, 455 U.S. at 434, 102 S.Ct. at 1156 ("the State may not finally destroy a property interest without first giving the putative owner an opportunity to present his claim of entitlement"); *Goss v. Lopez*, 419 U.S. 565, 579, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975) (due process requires "some kind of notice and ... some kind of hearing"). However, a predeprivation hearing is not required in all circumstances. For example, where the state must of necessity act quickly, *see Logan*, 455 U.S. at 436, 102 S.Ct. at 1158, or where the degree of the deprivation is not serious and the procedures underlying the decision to effect the deprivation are adequate to address the risk of an erroneous deprivation, *see Memphis Light, Gas, & Water Div. v. Craft*, 436 U.S. 1, 19, 98 S.Ct. 1554, 1565, 56 L.Ed.2d 30 (1978), a postdeprivation hearing or the avail-

ability of a common law tort remedy may satisfy due process. *See, e.g., Zinermon v. Burch,* 494 U.S. 113, 128, 110 S.Ct. 975, 984, 108 L.Ed.2d 100 (1990).

■ What process is required in a particular context or a given set of circumstances depends upon balancing the factors laid out in *Mathews v. Eldridge:*

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

Prior to applying the *Mathews* balancing test to the case at hand, it is important to understand the exact nature of Porter's procedural due process claims. The allegations in Porter's amended complaint resemble two types of procedural due process claims. In the first type, the plaintiff challenges the constitutional adequacy of an established state procedure. *See, e.g., Logan,* 455 U.S. at 436, 102 S.Ct. at 1158. In the second type, the plaintiff's challenge focuses on a state official's failure to provide the plaintiff the process he was due in a particular set of circumstances. *See, e.g., Zinermon v. Burch,* 494 U.S. 113, 117, 110 S.Ct. 975, 979, 108 L.Ed.2d 100 (1990).

Although the parties seem confused on this point, we believe that Porter's amended complaint asserts both types of claims. Consistent with Porter's allegation that it was the county's custom or policy not to provide an owner notice or an opportunity for a hearing prior to terminating the owner's property interest in animals and disposing of them,[6] we characterize the amended complaint's "First Claim for Relief" as a challenge to

established state procedure. The "Second Claim for Relief," concerning the alleged conspiracy between DiBlasio and Humphrey to violate Porter's due process rights by not providing him notice and an opportunity for a hearing, involves a challenge to the inadequacy of the process provided by those officials.

In dismissing the amended complaint, the district court focused upon the conduct of the state officials, characterizing Porter's amended complaint as challenging only the adequacy of the process the state officials provided him. Our conclusion that the amended complaint includes two types of procedural due process claims requires that we also address the merits of the established state procedure claim. We turn to that claim first because it is only logical to determine what state law authorizes in the form of established procedure before determining whether the officials failed to provide an individual with the process he was due. *See, e.g., Zinermon,* 494 U.S. at 136, 110 S.Ct. at 989 (state officials violated due process where they failed to provide hearing and state law provided them "broadly delegated, uncircumscribed power to effect the deprivation at issue"); *Easter House,* 910 F.2d at 1401 (state officials did not violate due process by failing to provide predeprivation process because their conduct was "patently inconsistent with Illinois law and constituted an outright departure from the authority which the DCFS official was granted under the governing statutes and regulations").

■ What process is due prior to terminating an owner's rights in seized animals? We turn to the three-prong test in *Mathews.* First, there can be no dispute that an animal owner has a substantial interest in maintaining his rights in a seized animal. Such is especially the case with potential income-generating animals such as horses, cattle, swine, and the like. Other types of animals more commonly kept as pets have a different, but not necessarily lesser, value to their owners, generally in the form of companion-

---

**6.** The allegation that the county had a custom or policy of not providing adequate process is sufficient to dispose of the Humane Society's argument that Porter failed to allege that a custom or policy of the Humane Society caused the com-

plained of violation as required by *Monell v. Department of Social Servs.,* 436 U.S. 658, 694–95, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978).

ship. That is not to say, of course, that horses may not also be the objects of their owners' affection. Second, the risk that an owner will suffer a permanent and wrongful deprivation of his rights under a system that provides only a five-day redemption period is high. Notice and a hearing provide the owner with the opportunity to challenge the legality of the original seizure of his animal, as well as the validity of any costs the state is attempting to assess for the seizure and care of the animal. Finally, requiring that the county provide notice and an opportunity for a hearing prior to terminating an owner's interest is not a significant burden. Section 951.15(3) already provides a five-day redemption period. Providing an owner with the opportunity for a hearing prior to the end of that period would not be unduly burdensome. Thus, we conclude that Wisconsin must provide an owner notice and an opportunity for a hearing prior to permanently terminating an individual's interest in seized animals.[7]

We next consider whether established state procedure authorized the process the Constitution requires. In his amended complaint, Porter alleged that the county had a custom or policy of not providing an owner notice or an opportunity for a hearing before terminating his property interest and disposing of his animals. Porter acknowledges in his brief to this court that §§ 951.15(2)–(3) required that he be provided notice prior to the state terminating his ownership interest. Thus narrowed, Porter's challenge is that established state procedure failed to provide for an opportunity for a hearing.

Defendants argue that several provisions in the Wisconsin statutes required that the county provide an owner the opportunity for a hearing prior to terminating his rights in his animals. Porter rejoins to the contrary, arguing the Wisconsin statutes are silent on this point and the county has a custom or policy of not providing an opportunity for a hearing. Should there be an absence of a

formal requirement that the county provide an opportunity for a hearing, such as state law or county ordinance, the county's custom of not doing so would translate into an informal but established state procedure. *See Monell*, 436 U.S. at 695, 98 S.Ct. at 2037–38; *Easter House*, 910 F.2d at 1403. Thus, we must determine whether the Wisconsin statutes made provision for the requisite hearing.

Defendants unsuccessfully argue that three different statutes provide for the requisite opportunity for a hearing: WIS. STAT. §§ 951.15(3), 170.04, and 968.20.

On its face, § 951.15 does not provide an owner with an opportunity for a hearing to challenge the legality of the seizure or the reasonableness of incurred expenses. Section 951.15(3) requires that the owner "pay the expenses incurred" in order to redeem his animal. That statute does not include any language from which we could infer that the statute authorizes officials to provide an opportunity for a hearing to challenge the legality of the seizure or the reasonableness of the boarding charges.

█ Defendants also argue that WIS. STAT. § 170.04 provides the requisite opportunity for a hearing. That section provides:

The owner or person entitled to the possession of the stray at any time within one year after the notice is filed with the town clerk may have the stray restored to him or her upon proving his or her right to the stray and paying all lawful charges. If the claimant and the finder cannot agree as to the amount of the charges or upon what should be allowed for the use of the stray either party, on notice to the other, may apply to the chairperson of the town to settle the dispute, who for that purpose may examine witnesses on oath. If any amount if found due the finder, over the value of the use of the stray, the amount,

7. Our conclusion that an opportunity for a hearing is required prior to the permanent deprivation of an owner's property interest in his animals is not novel. Indeed, other jurisdictions have reached that same conclusion. *See DiCesare*, 12 F.3d at 978; *Humane Society v. Adams*, 439 So.2d 150, 153 (Ala.1983); *Carrera v. Bertaini*, 63 Cal.App.3d 721, 134 Cal.Rptr. 14, 19 (1976); *Jenks v. Stump*, 41 Colo. 281, 93 P. 17, 19 (1907); *Commonwealth v. Gonzalez*, 403 Pa.Super. 157, 588 A.2d 528, 536–37 (1991); *Anderson v. George*, 160 W.Va. 76, 233 S.E.2d 407, 409 (1977); *see also Bowden v. Davis*, 205 Or. 421, 289 P.2d 1100, 1116 (1955) (holding failure to provide notice and hearing under horse roundup statute violated due process).

with the costs, shall be a lien upon the stray and costs of the adjudication shall abide the decision of the town chairperson. If either party refuses to accept the decision of the town chairperson, action may be brought in circuit court.

Wis. Stat. § 170.04. Defendants argue that § 170.04 is applicable to seized animals because § 951.15(3) provides that where an owner fails to redeem a seized animal "it may be treated as a stray and dealt with as such," and chapter 170 concerns the treatment of "strays and lost chattels." However, chapter 170 of the Wisconsin Statutes speaks in terms of an individual finder, see § 170.04, provides a seven-day notice requirement, § 170.02, and provides for redemption within any time up to a year, §§ 170.04–.05.

The Humane Society is not an individual finder; indeed, unlike chapter 174, which concerns stray dogs, chapter 170 does not contemplate involvement by the Humane Society. See Wis. Stats. § 58.07(2) (the duties of humane officers "shall include the enforcement of § 95.21 and chs. 174 and 951"); § 174.046 (detailing the role of a county pound in caring for and disposing of stray dogs). The notice required within seven days by § 170.02 is duplicative of the notice required immediately under § 951.15(2), and the one-year redemption period in §§ 170.04 and 170.05 conflicts with the five-day redemption period contemplated in § 951.15(3). Furthermore, as the Wisconsin Court of Appeals has held, § 951.15(3) provides the county with the discretion to treat a neglected animal as a stray. *State v. Bauer*, 127 Wis.2d 401, 379 N.W.2d 895, 900 (Wis.Ct. App.1985), *review denied*, 129 Wis.2d 550, 388 N.W.2d 185 (1986). Thus, the county is not required by § 951.15(3) to make the initial stray designation that, according to defendants, makes a hearing available.[8]

■ Finally, defendants argue that § 968.20(1), which provides that a person whose property was seized with or without a warrant may petition for its return in the circuit court for the county in which the property was seized, also provided Porter with an opportunity for a hearing. However, § 968.20 has no relation to the county's disposal of animals seized on the basis of neglect, nor does it purport to establish procedural safeguards for the county's termination of an owner's rights. Thus, it cannot be interpreted as requiring the Humane Society to provide an opportunity for a hearing prior to the termination of an owner's property interest in his seized animals.

We are left with the conclusion that the Wisconsin statutes fail to require that animal owners be provided an opportunity for a hearing prior to the termination of their ownership rights. Because an animal owner is entitled to a predeprivation hearing and because Porter has essentially alleged that the county has an informal, established procedure of terminating an owner's rights without providing the opportunity for a hearing, we conclude that Porter has stated a viable due process claim on that ground.

■ The defendants argue that even if the Wisconsin statutes fail to provide an opportunity for a hearing, DiBlasio and Humphrey's conduct in not providing Porter the statutory notice or an opportunity for a hearing and eventually adopting the animals out to DiBlasio and her friends were "random and unauthorized" acts for which the state could not have been required to provide predeprivation process. *See Parratt*, 451 U.S. at 541, 101 S.Ct. at 1916. Even if defendants are correct, their argument does not dispose of Porter's procedural due process claim challenging an established state procedure. *Parratt* involved "a tortious loss of . . . property as a result of a random and unauthorized act by a state employee . . . not the result of some established state procedure." *Parratt*, 451 U.S. at 541, 101 S.Ct. at 1916; *see also Logan*, 455 U.S. at 435–36, 102 S.Ct. at 1158.

8. The inapplicability of § 170.04 was essentially recognized at oral argument by counsel for Dane County where he conceded that the county treated an animal owner's rights as extinguished after the expiration of the five-day redemption period established in § 951.15(3) (chapter 170 does not recognize an owner's rights as extinguished until after one year). That practice is consistent with the chapter detailing the treatment of stray dogs under which, unlike chapter 170, the Humane Society expressly maintains enforcement powers. See §§ 58.07, 174.046(7)–(9) (providing that a dog may be disposed of if his owner fails to redeem it within seven days).

Thus, even if the failure to provide Porter with the requisite process was "random and unauthorized," it does not shield the defendants from a claim of an inadequate, established procedure.

■ Turning to the other procedural due process claim—that DiBlasio and Humphrey failed to provide Porter with the process he was due—we disagree with the district court's conclusion that DiBlasio and Humphrey's failure to provide Porter with the requisite process was "random and unauthorized." As the Supreme Court stated in Zinermon, the *Parratt/Hudson* rule that a state cannot be faulted for not providing predeprivation process where the deprivation was "random and unauthorized" is not an exception to the *Mathews* balancing test, "but rather an application of that test to the unusual case in which one of the variables of the *Mathews* equation—the value of predeprivation safeguards—is negligible in preventing the kind of deprivation at issue." *Zinermon*, 494 U.S. at 129, 110 S.Ct. at 985.

Porter does not dispute, nor do we disagree with, defendants' contention that DiBlasio's and Humphrey's failure to provide Porter with the requisite statutory notice under § 951.15(2) was "random and unauthorized." Porter's challenge focuses on DiBlasio's and Humphrey's failure to provide Porter an opportunity for a hearing prior to terminating his ownership interest.

In order to determine whether Porter was entitled to an opportunity for a hearing prior to DiBlasio and Humphrey terminating his ownership interest and disposing of the horses, we must determine whether their conduct presents the type of deprivation that was predictable, whether the nature of that deprivation would make providing additional predeprivation process impossible, and whether the deprivation was authorized. *Zinermon*, at 136–39, 110 S.Ct. at 989–90. We note that the alleged deprivation by DiBlasio and Humphrey was the termination of Porter's ownership interest five days after the February 22 letter, not the adoption of the horses

by DiBlasio, her daughter, and her friends that occurred later.

First, the termination of Porter's ownership rights five days after the February 22 letter was predictable. Section 951.15(3) provides that an owner must redeem a seized animal within five days after notice or the Humane Society may treat it as a stray. DiBlasio and Humphrey followed that section of the statute, terminating Porter's rights five days after the February 22 letter. It was after the statute allowed them to treat the animals as strays that they terminated Porter's property interest and adopted out the horses. That such a deprivation would occur following the end of the redemption period is certainly predictable. Second, requiring an opportunity for a hearing prior to a deprivation that would occur at the end of the five-day redemption period is not impossible or excessive. As discussed above, provision for a hearing could be made prior to the end of the redemption period. Third, we cannot say that the termination of Porter's ownership interest and later adoption of the horses was unauthorized.

The Humane Society argues in its brief that "Porter has not identified any state statute that gives a person in possession of a stray the authority to sell or otherwise dispose of the stray where the owner is known. Thus, the state has provided procedural safeguards to protect the property of its citizens...." The Humane Society is correct that Porter has failed to present us with a statute that expressly authorized a humane officer to terminate an owner's rights in his animals and then adopt them out. However, § 951.15(3) authorized the Humane Society to "treat[ ] [an unredeemed animal] as a stray and deal[ ] with it as such," and the defendants have not been able to articulate the scope of the authority conferred by that provision. Section 58.07(2) authorized the county to prescribe ordinances relative to the enforcement of chapter 951, but it appears that it has failed to define the scope of a humane officer's enforcement powers.[9] We

---

9. We do note that a humane officer's authority to dispose of seized animals is not limitless. However, besides § 951.15, the only other statutory limit does not appear to be relevant to this case:

"No humane officer may buy or sell animals for private and personal gain which come into his custody in the course of carrying out his official duties." § 58.07(4).

can reasonably infer from Porter's allegations that DiBlasio and Humphrey were authorized, by custom or policy, to effect the deprivation of his ownership interest. That is enough, combined with the ambiguous grant of authority under § 951.15(3), to survive a motion under Rule 12(b)(6). We therefore find that Porter's due process claim premised upon the actions of DiBlasio and Humphrey is viable. Whether Porter has set forth a viable conspiracy claim is a question not presented in this appeal.

Porter also argues that the district court erred in dismissing his substantive due process claim. In his amended complaint, Porter alleged a substantive due process violation arising from the Humane Society's disposition of the horses for little or no money. The district court dismissed this claim after finding that Porter had failed to show that his state law remedies were inadequate or that terminating his interest in the horses and adopting them out qualified as a separate constitutional violation.

The Supreme Court has noted that "the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Zinermon,* 494 U.S. at 125, 110 S.Ct. at 983 (quoting *Daniels,* 474 U.S. at 331, 106 S.Ct. at 664). In order to state a viable substantive due process claim, "in addition to alleging that the decision was arbitrary and irrational, 'the plaintiff must also show either a separate constitutional violation or the inadequacy of state law remedies.'" *New Burnham Prairie Homes, Inc. v. Village of Burnham,* 910 F.2d 1474, 1481 (7th Cir.1990) (quoting *Polenz v. Parrott,* 883 F.2d 551, 558–59 (7th Cir.1989)). Porter can do neither.

▮ Porter attempts to rest his substantive due process claim on the Takings Clause of the Fifth Amendment; he argues that a violation occurred when the defendants terminated his rights in the horses without providing him just compensation. We disagree. The seizure and disposal of neglected animals falls squarely within the state's police power. *See Regents of Univ. of Wis. v. Dane County Humane Soc'y,* 260 Wis. 486, 51 N.W.2d 56,

59 (1952). Indeed, the power to seize and dispose of neglected animals is analogous to the state's traditional power to take action to abate a nuisance or to protect the public health. As such, the state's disposal of neglected animals falls within the class of property deprivations for which the Fifth Amendment does not require compensation. *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 1029, 112 S.Ct. 2886, 2900, 120 L.Ed.2d 798 (1992); *see also Miller v. Schoene,* 276 U.S. 272, 280, 48 S.Ct. 246, 247–48, 72 L.Ed. 568 (1928); *Sentell v. New Orleans & C.R. Co.,* 166 U.S. 698, 704, 17 S.Ct. 693, 695–96, 41 L.Ed. 1169 (1897).

▮ Porter also argues that the Humane Society's termination of his ownership interest in the horses and subsequent transfer of that interest to DiBlasio and her friends constituted a taking for solely a private purpose. The Constitution forbids a taking executed for no other reason than to confer a private benefit on a particular private party, even when the taking is compensated. *Hawaii Housing Auth. v. Midkiff,* 467 U.S. 229, 245, 104 S.Ct. 2321, 2331, 81 L.Ed.2d 186 (1984). However, a taking fulfills the public use requirement if it serves any legitimate purpose within the government's authority. *Berman v. Parker,* 348 U.S. 26, 32–33, 75 S.Ct. 98, 102–03, 99 L.Ed. 27 (1954). As discussed above, the seizure of neglected animals falls squarely within the state's police power. Thus, the horses were not taken solely for a private purpose, and "[t]he mere fact that property taken outright by eminent domain is transferred in the first instance to private beneficiaries does not condemn that taking as having only a private purpose." *Hawaii Housing Auth.,* 467 U.S. at 243–44, 104 S.Ct. at 2331.

Porter has also failed to make the alternative showing required for a substantive due process claim that his state law remedies are inadequate. Indeed, our decision today reinstates his supplemental state law claim for conversion.

Essentially, Porter cannot contest the constitutionality of the county's ability to seize and dispose of allegedly neglected animals. His only viable constitutional claims concern

the county's failure to provide him with the requisite process prior to permanently affecting that deprivation. Thus, we REVERSE the dismissal of all but the substantive due process and fifth amendment claims, the dismissal of which we AFFIRM, and we REMAND this matter to the district court for further proceedings consistent with this opinion.