**Ira Iglesia de la BIBLIA ABIERTA, Plaintiff–Appellee,**

**v.**

**William BANKS, Defendant–Appellant.**

**C.L.U.B. (Civil Liberties for Urban Believers), Christ Center, Christian Covenant Outreach Church, His Word Ministries to All Nations, Christian Bible Church, Church on the Way Praise Center, Monte de Sion (Mount Zion) Church, and Living Word Ministries, Plaintiffs–Appellees,**

**v.**

**Patrick HUELS, Defendant–Appellant.**

**Nos. 97–1041, 97–1415.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 25, 1997.

Decided Nov. 7, 1997.

John W. Mauck, Paul B. O'Flaherty, Jr. (argued), Mauck, Bellande, Baker & O'Connell, Chicago, IL, for Plaintiff–Appellee Ira Iglesia de la Biblia Abierta.

Michael V. Casey (argued), Martin H. Redish, John M. Blim, Holleb & Coff, Chicago, IL, for Defendant–Appellant William Banks.

John W. Mauck, Paul B. O'Flaherty, Jr. (argued), J. Thomas Witek, Mauck, Bellande, Baker & O'Connell, Chicago, IL, for Plaintiffs–Appellees Civil Liberties for Urban Believers, Christ Center, Christian Covenant Outreach Chirch, His Work Ministries to All Nations, and Chrisitan Bible Church.

Susan Haerr Zucker, Office of the Corporation Counsel, Appeals Division, Chicago, IL, Michael V. Casey (argued), Martin H.

Redish, John M. Blim, Holleb & Coff, Chicago, IL, for Defendant–Appellant Patrick Huels.

Before POSNER, Chief Judge, and BAUER and EVANS, Circuit Judges.

BAUER, Circuit Judge.

Ira Iglesia de la Biblia Abierta ("Biblia Abierta") filed a complaint against Alderman William Banks ("Banks"), alderman for the 36th Ward in Chicago, Illinois, alleging that the alderman violated Biblia Abierta's civil rights by introducing a zoning ordinance to the Chicago City Council Zoning Committee and voting for the ordinance. Alderman Banks' participation in these activities ultimately resulted in the passage of the zoning ordinance which prevented Biblia Abierta from acquiring a particular parcel of property located in the 36th Ward to use as its church. His Word Ministries to All Nations ("His Word") filed a similar complaint against then-Alderman Patrick Huels ("Huels"), former alderman for the 11th Ward in Chicago, also alleging that the alderman violated His Word's civil rights by introducing a zoning ordinance to the City Council Zoning Committee and voting for the ordinance. Huels' participation in these activities ultimately resulted in the passage of the zoning ordinance which prevented His Word from acquiring a particular parcel of property in the 11th Ward to use as its church. In substantially identical motions asserting legislative immunity, Aldermen Banks and Huels claimed that their conduct involved core legislative activities and, therefore, they were entitled to absolute legislative immunity. Judge Grady in the Northern District of Illinois denied Alderman Banks' motion to dismiss, finding that he was not entitled to absolute legislative immunity. Judge Andersen, also in the Northern District of Illinois, denied Alderman Huels' motion for summary judgment, finding that Huels also was not entitled to absolute legislative immunity. Aldermen Banks and Huels now appeal, and these appeals were consolidated. For the reasons set forth below, we reverse the district courts' judgments and conclude that both Alderman William Banks and former Alderman Patrick Huels are entitled to absolute legislative immunity.

## Background

### A. William Banks

William Banks is the 36th Ward alderman in Chicago and was, during the relevant time in question, Chairman of the Chicago City Council's Committee on Zoning (the "Zoning Committee"). Biblia Abierta is a religious organization with a predominantly Hispanic congregation. It is incorporated as an Illinois not-for-profit corporation. On June 20, 1994, Biblia Abierta contracted to purchase a parcel of property located in the 36th Ward of Chicago at 6466 West North Avenue. Biblia Abierta intended to use the property as a church where its congregation could meet and assemble for worship.

According to the zoning law in effect at the time, the property at 6466 West North Avenue was zoned B4–1 under the Chicago Zoning Ordinance. Under this ordinance, B4–1 property could be used as a church, subject to obtaining a special use permit from the City's Zoning Board of Appeals ("ZBA"). Accordingly, Biblia Abierta filed an application with the ZBA to obtain a special use permit for the property. The ZBA scheduled a hearing for August 19, 1994 to review Biblia Abierta's application for a special use permit.

Before the scheduled date of the ZBA hearing, Alderman Banks introduced an ordinance (the "Ordinance") to rezone the property in question. The Ordinance proposed to change the zoning classification of 6466 West North Avenue to prohibit use of the property as a church by right or by special use permit. Before the ZBA voted on Biblia Abierta's request for a special use permit, it postponed the hearing to September 15, 1994, as requested by Alderman Banks. Thereafter, the Zoning Committee voted unanimously to recommend passage of the Ordinance. After receiving the recommendations of the Zoning Committee and before the ZBA voted on Biblia Abierta's application, the City Council voted to enact the Ordinance. The enactment of this Ordinance prevented Biblia Abierta from purchasing the property for use as a church.

On June 10, 1996, Biblia Abierta filed a complaint against the City of Chicago and Alderman Banks, alleging civil rights violations and violations of the First and Fourteenth Amendments of the United States Constitution and similar provisions of the Illinois Constitution. The defendants filed a motion to dismiss the complaint on August 7, 1996, claiming, *inter alia*, that Alderman Banks was entitled to absolute legislative immunity for his participation in the rezoning of 6466 West North Avenue. Judge John J. Grady denied the motion to dismiss. Alderman Banks now appeals.

### B. Patrick Huels

Patrick Huels was, at the relevant times in question, the 11th Ward alderman in Chicago. His Word is a religious organization incorporated as an Illinois not-for-profit corporation. On March 27, 1992, His Word entered into a contract to purchase a parcel of property at 1616 West Pershing with the intent to use the property for its church services. At that time, the property at 1616 West Pershing was zoned C1–2, which allows the property to be used as a church so long as a special use permit is first obtained from the ZBA. On March 30, 1992, His Word filed an application for a special use permit with the ZBA. Thereafter, the ZBA set a hearing date for June 19, 1992 to review the application, but the hearing was continued until August 21, 1992. On August 21, Alderman Huels asked the ZBA to again continue the hearing to review His Word's application until October 16, 1992.

On October 14, 1992, Alderman Huels proposed a rezoning ordinance (the "Ordinance") to the Zoning Committee to change the zoning classification at 1616 West Pershing to prevent the property from being used as a church even with a special use permit. On October 16, the ZBA continued the hearing to review His Word's special use permit application until December 18, 1992. Despite His Word's opposition to the Ordinance, the Zoning Committee unanimously voted to recommend its passage to the City Council. On December 15, 1992, the City Council accepted the Zoning Committee's recommendations and voted to enact the Ordinance. Conse-

quently, His Word was unable to purchase the property for use as a church.

On October 11, 1994, His Word, along with six other churches and an organization of churches known as Civil Liberties for Urban Believers ("C.L.U.B."), filed their initial complaint, alleging various civil rights violations and violations of the First and Fourteenth Amendments of the United States Constitution and similar provisions of the Illinois Constitution. Count XII of that complaint specifically alleged that the actions of Alderman Huels and the City of Chicago deprived His Word and other similarly situated churches of their civil rights. In response, Alderman Huels filed a motion to dismiss on January 27, 1995, asserting absolute legislative immunity. That motion was denied by Judge Wayne R. Andersen on February 26, 1996. Huels subsequently filed a motion for summary judgment also based on absolute legislative immunity which Judge Andersen denied on January 23, 1997. Alderman Huels now appeals the order denying summary judgment.

On March 19, 1997, this Court ordered consolidation of Aldermen Banks' and Huels' appeals for purposes of briefing and disposition. On appeal, both Aldermen Banks and Huels argue that they are entitled to absolute legislative immunity, asserting that as local legislators: (1) they are absolutely immune from suit for introducing and voting for the Ordinances; and (2) their requests to continue the ZBA hearings are also protected conduct for which they are entitled to absolute legislative immunity.

### Analysis

We review a district court's decision to grant or deny summary judgment *de novo*, reviewing all factual inferences in the light most favorable to the non-moving party to determine whether there exists any genuine issue of material fact. *McGinn v. Burlington Northern R.R. Co.*, 102 F.3d 295, 299 (7th Cir.1996). We review a district court's decision to grant or deny a motion to dismiss under 12(b)(6) *de novo*, accepting the well-pled allegations in the complaint as true and drawing all inferences in favor of the non-

moving party. *Porter v. DiBlasio*, 93 F.3d 301, 305 (7th Cir.1996).

■ As a preliminary matter, a brief discussion of the doctrine of absolute legislative immunity is in order. In civil cases, common law absolute legislative immunity offers protection similar to that available to federal legislators under the United States Constitution's Speech and Debate Clause. *Thillens, Inc. v. Community Currency Exchange Assoc. of Illinois, Inc.*, 729 F.2d 1128, 1130 (7th Cir.1984). In *Tenney v. Brandhove*, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), the Supreme Court held that state legislators were absolutely privileged in their legislative acts in any action against them for damages. Moreover, *Tenney* firmly established that motive is not an element to be considered when determining absolute legislative immunity. *Id.* at 377, 71 S.Ct. at 788–89. "The claim of an unworthy purpose does not destroy the privilege [of absolute legislative immunity]." *Id.* This Court subsequently extended absolute legislative immunity protection to local legislators. *See Rateree v. Rockett*, 852 F.2d 946, 950–51 (7th Cir.1988).

The doctrine of absolute legislative immunity recognizes that when acting collectively to pursue a view of the public good through legislation, legislators must be free to represent their constituents "without fear of outside interference" that would result in private lawsuits. *Supreme Court of Virginia v. Consumers Union of United States, Inc.*, 446 U.S. 719, 731, 100 S.Ct. 1967, 1974, 64 L.Ed.2d 641 (1980). Any restriction on a legislator's freedom undermines the public good by interfering with the rights of the people to representation in the democratic process. *Tenney*, 341 U.S. at 377, 71 S.Ct. at 788–89. Of course, legislators are bound to respect the limits placed on their discretion by both the United States Constitution and individual state constitutions. But when acting "in the sphere of legitimate legislative activity," *id.* at 376, 71 S.Ct. at 788, legislators are to be "immune from deterrents to the uninhibited discharge of their legislative duty." *Id.* at 377, 71 S.Ct. at

788. Private lawsuits threaten to chill zealous representation by encouraging legislators to avoid controversial issues or stances in order to protect themselves "not only from the consequences of litigation's results but also from the burden of defending themselves." *Supreme Court of Virginia*, 446 U.S. at 732, 100 S.Ct. at 1974 (quoting *Dombrowski v. Eastland*, 387 U.S. 82, 85, 87 S.Ct. 1425, 1427–28, 18 L.Ed.2d 577 (1967)).

■ As *Tenney* firmly established, absolute immunity shields a legislator's conduct even when that conduct is based on improper motives. *Tenney*, 341 U.S. at 378, 71 S.Ct. at 789. *See also Rateree*, 852 F.2d at 951. "Absolute immunity, however, only applies to those legislators acting in their legislative capacity." *Rateree*, 852 F.2d at 950. Courts have granted absolute legislative immunity to legislators for various activities which include: (1) core legislative acts such as introducing, debating, and voting on legislation; (2) activities that could not give rise to liability without inquiry into legislative acts and the motives behind them; and (3) activities essential to facilitating or preventing the core legislative process. *See, e.g., Gravel v. United States*, 408 U.S. 606, 616, 92 S.Ct. 2614, 2622–23, 33 L.Ed.2d 583 (1972) (immunity granted for senator's actions in subcommittee to protect legislative process); *United States v. Brewster*, 408 U.S. 501, 526, 92 S.Ct. 2531, 2544, 33 L.Ed.2d 507 (1972) (immunity granted where it would be necessary to inquire into how a legislator spoke, debated, voted, or acted); *Dombrowski v. Eastland*, 387 U.S. 82, 84–85, 87 S.Ct. 1425, 1427–28, 18 L.Ed.2d 577 (1967) (immunity granted for legislative committee's act of subpoenaing records for use in its hearings).

Now, we turn to the facts of these cases. First, Aldermen Banks and Huels argue that they are absolutely immune from suit for introducing and voting for the zoning ordinances. They contend that introducing and voting for legislation are core legislative activities which are entitled to absolute immunity. The Churches,[1] however, assert that Aldermen Banks and Huels engaged in con-

---

1. In the following discussion when referring to Biblia Abierta and His Word collectively, we will address them as "the Churches."

duct beyond the narrow scope of "core" legislative activity protected by legislative immunity. Therefore, the Churches argue, the aldermen are not entitled to immunity. The district courts recognized the significance of the doctrine of absolute legislative immunity, yet neither district judge found that the aldermen were entitled to absolute legislative immunity. The district courts did not deny that introducing and voting on legislation are protected legislative activities, but rather questioned whether the aldermen's conduct fell outside the core of protected activity.

Introducing and voting on legislation are elements of the core legislative process and cannot be separated from that legislative function. *See Rateree*, 852 F.2d at 950. As such, they are entitled to absolute immunity. *Id.* Introducing legislation naturally is the first step in the legislative process. If legislators feared that they would be subject to civil liability for their attempts to introduce new legislation or propose amendments, our government would become stagnant; changes would not be considered, let alone implemented. To encourage legislators best to represent their constituents' interests, legislators must be afforded immunity from private suit. If this protection is not provided, the structure of our government would collapse. The challenged activities at issue in these appeals are precisely introducing and voting on legislation and clearly fall within the core of legislative activities. Any alderman's participation in introducing and voting for a rezoning ordinance is entitled to absolute legislative immunity.

■ Next, Banks and Huels argue that the rezoning ordinances constitute legislation for immunity purposes. The Churches contend that the passage of a rezoning ordinance does not qualify as legislation, but rather qualifies as an administrative or executive act. So they say, legislative immunity is not appropriate. On this point the district courts differed, but still ultimately concluded that the aldermen were not entitled to legislative immunity. Judge Andersen held that "[r]ules which apply only to certain individuals appear more like executive or administrative decisions than legislative ones." *C.L.U.B. v. City of Chicago*, No. 94 C 6151,

1996 WL 89241, at *35 (N.D.Ill. Feb. 27, 1996). Judge Grady, however, was "not persuaded that an act cannot be legislative in character unless it is directed to the general community ...." *Ira Iglesia de la Biblia Abierta v. City of Chicago*, 949 F.Supp. 637, 642 n. 2 (N.D.Ill.1996). Despite the different analyses, both district courts concluded that Aldermen Banks and Huels were not immune from liability.

We have repeatedly held that the availability of absolute immunity does not depend upon the number of people that a law happens to affect at the time of its passage. *See Rateree*, 852 F.2d at 950 (city commissioners entitled to legislative immunity even though their actions affected only a few individuals); *Reed v. Village of Shorewood*, 704 F.2d 943 (7th Cir.1983) (ordinance which reduced the number of Class A liquor licenses and affected only a few people who previously had licences was legitimately legislative and trustees were entitled to immunity). Although the initial effect of these zoning ordinances impacts the Churches, the ordinances apply equally to all persons. In passing the ordinances, the Zoning Committee and the City Council created neutral, prospective rules that apply to all current and future owners of the property. Although the Churches had entered into contracts to purchase the properties in question, their interests in the use for the parcels of land had not vested. Such use required a special use permit, and there was no guarantee that they would automatically receive the permits. Despite the fact that the ordinances' most immediate impact falls on a limited group of people, immunity still attaches to the aldermen's actions.

The Churches emphasize that both Alderman Banks and Alderman Huels had knowledge of the fact that Biblia Abierta and His Word had entered into contracts to purchase the properties and had filed applications with the ZBA for special use permits. The Churches allege that because of this knowledge the aldermen's participation was not legislative and, therefore, not entitled to immunity. Knowledge of the contracts to purchase the properties is immaterial to this inquiry and has no impact on whether Alder-

men Banks and Huels are absolutely immune from liability.

Fundamentally, the issue on appeal involves a legal question: Is the rezoning of a single parcel of property legitimately legislative whereby aldermen who participate in the passage of an ordinance are entitled to absolute legislative immunity? There is no question of fact that would affect the outcome of these cases. Inquiry into the aldermen's knowledge of the contracts relates to motive, and motive is not a proper consideration for legislative immunity. *See Tenney*, 341 U.S. at 378, 71 S.Ct. at 789; *Brewster*, 408 U.S. at 526, 92 S.Ct. at 2544. The rezoning of a single parcel of property is a question of law, and there is no need for fact finding. It is not the role of district court judges to make factual determinations each and every time a rezoning issue comes before them. Legislators/aldermen are entitled to know, as a matter of law, whether or not rezoning is legitimately legislative. We believe that rezoning (including participation in the introduction and passage of a rezoning ordinance) is a legitimate legislative activity.

■ Finally, Aldermen Banks and Huels assert that their requests to continue the ZBA hearings also are legislative functions that are entitled to immunity. They argue that establishing liability upon the continuance requests would require prohibited inquiry into core legislative activity. Banks and Huels argue that their requests were essential to preserve the City Council's legislative prerogatives. The Churches, however, contend that these requests fall within the ambit of extra-legislative conduct and go beyond the narrow scope of protected core legislative activity. The district courts agreed with the Churches and similarly questioned whether "making the request was the exercise of a legislative function." *Ira Iglesia de la Biblia Abierta v. City of Chicago*, 949 F.Supp. 637,

645–46 (N.D.Ill.1996). Judge Grady further recognized that "legislative immunity applies only to acts which are part of the legislative process itself, such as voting, and does not extend into activities 'that are casually or incidentally related to legislative affairs....'" *Id.* at 641 (quoting *United States v. Brewster*, 408 U.S. 501, 528, 92 S.Ct. 2531, 2545, 33 L.Ed.2d 507 (1972)). Judge Andersen similarly concluded that he was "not fully convinced that Alderman Huels' conduct was completely legislative in nature" and, therefore, entitled to absolute immunity.[2] *C.L.U.B. v. City of Chicago*, No. 94 C 6151, 1997 WL 43226, at *2 (N.D.Ill. Jan. 27, 1997). *See also C.L.U.B. v. City of Chicago*, No. 94 C 6151, 1996 WL 89241, at *17–18 (N.D.Ill. Feb. 27, 1996).

As a threshold matter, it is important to note that even if the continuances had not been requested and granted, there was no guarantee that Biblia Abierta or His Word would have automatically received the special use permit. The ZBA does not grant special use permits as a matter of right. Moreover, the aldermen's requests for postponements did not translate into automatic continuances. The ZBA, in its discretion, granted the continuances.

By questioning the aldermen's requests to postpone the ZBA hearings, the inquiry would also inevitably be directed at other conduct which would include their legislative acts. An inquiry into a legislator's motives for his actions, regardless of whether those reasons are proper or improper, is not an appropriate consideration for the court. *Brewster*, 408 U.S. at 526, 92 S.Ct. at 2544. The United States Supreme Court stated in *Tenney*:

In times of political passion, dishonest or vindictive motives are readily attributed to legislative conduct and as readily believed. Courts are not the place for such contro-

---

**2.** We recognize that the district court judges questioned the integrity of Aldermen Banks and Huels in their proposing and voting for the zoning ordinances and, in particular, their requests to the ZBA for continuances. However, this appeal involves a question of law and not fact. Although the district court judges may have wanted to take a stand against suspicious aldermanic actions, the issue on appeal is whether rezoning qualifies as legislation, and there is no place for an inquiry into the facts. As the United States Supreme Court firmly established in *Tenney*, consideration of the aldermen's motives is not proper inquiry. Consequently, with motive not taken into account, as a matter of law, Aldermen Banks and Huels are entitled to absolute legislative immunity.

versies. Self discipline and voters must be the ultimate reliance for discouraging or correcting such abuses.

*Tenney,* 341 U.S. at 378, 71 S.Ct. at 789 (footnote omitted). The requests to continue the hearings were inextricably intertwined with the legislative process of introducing and voting on the zoning ordinances and cannot be separated from those legislative functions.

Additionally, the requests to continue the hearings were necessary and proper to the exercise of legislative authority. They preserved the full scope of the City Council's ability and authority to legislate. As discussed above, a rezoning ordinance is legitimately legislative. Thus, it is within an alderman's legislative discretion to request a postponement. An alderman ought to be able to notify an administrative board or agency that legislation is going to be considered that may impact its decision and that the board or agency, in its discretion, may wish to postpone its review until the legislation is considered.

### Conclusion

For the foregoing reasons, we conclude that Alderman William Banks and former Alderman Patrick Huels are absolutely protected by the legislative immunity doctrine for introducing and voting on rezoning ordinances and for requesting continuances of the ZBA hearings. The judgments below are REVERSED and the cases are REMANDED with instructions to enter judgments for the defendants.