**Patrick O'KEEFE, Plaintiff,**

v.

**Harold GIST, in his capacity as a police officer, and The City of Girard, Illinois, an Illinois municipal corporation, Defendants.**

No. 10–cv–3149.

United States District Court, C.D. Illinois, Springfield Division.

Aug. 17, 2012.

Stephen F. Hedinger, Sorling Northrup, Springfield, IL, for Plaintiff.

Christine Giacomini McClimans, Schrempf Blaine Kelly Napp & Darr, Alton, IL, for Defendants.

## *OPINION*

SUE E. MYERSCOUGH, District Judge:

This matter is before the Court on the Report and Recommendation entered by Magistrate Judge Byron G. Cudmore. *See* d/e 21. In the Report and Recommendation, Magistrate Judge Cudmore recommends allowing the Motion to Dismiss (d/e 9) filed by Defendants Harold Gist ("Gist") and The City of Girard, Illinois ("Girard"). Plaintiff, Patrick O'Keefe ("O'Keefe"), timely filed an Objection to the Magistrate Judge's Report and Recommendation ("Objections") (d/e 22). *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b). This Court reviews de novo any part of the Report and Recommendation to which a party has properly objected. *See* 28 U.S.C. § 636(b)(1)(C). For the reasons set forth below, the Court overrules the Objections and adopts Magistrate Judge Cudmore's Report and Recommendation. Accordingly, Defendants' Motion to Dismiss (d/e 9) is GRANTED.

## I. *BACKGROUND*

A. Plaintiff's Complaint

On June 24, 2010, Plaintiff filed a three-count Complaint (d/e 1) against Defendants. In Count I, Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, alleging that Defendants violated Plaintiff's due process rights when Defendant Harold Gist gave Plaintiff's dog, Boomer ("the dog"), to another person, David Hagan ("Hagan"), without a hearing and without Plaintiff's consent. Compl. ¶ 24. In Count II, Plaintiff seeks a declaratory judgment against Girard. Plaintiff asks this Court to declare that the Girard Municipal Code of Ordinances ("Ordinance"), as interpreted by Girard and its police officers, violates the Fourteenth Amendment of the United States Constitution and seeks an order prohibiting enforcement of the Ordinance. Compl. ¶ 33. In Count III, Plaintiff also alleges an Illinois common law claim for conversion against Defendant Gist. Compl. ¶ 37. The parties are familiar with the specific allegations of each count contained in Plaintiff's Complaint, and this information is fully set out in the "Statement of Facts" section of Magistrate Judge Cudmore's Report and Recommendation, adopted herein.

B. Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6)

On July 21, 2011, Defendants filed their Motion to Dismiss. In the Motion to Dismiss, Defendants contend that all three counts of the Complaint should be dismissed for failure to state a claim upon which relief may be granted. Specifically, Defendants argue that Plaintiff fails to adequately allege a due process violation (Count I) because Plaintiff received the process that was due through a post-deprivation hearing in the state court system, through which he retrieved the dog. *See O'Keefe v. Hagan,* Macoupin County Circuit Court Case No. 09 LM 130.

Additionally, Defendants argue that Count II should be dismissed because Plaintiff is not entitled to any declaratory relief. Defendants contend that because Plaintiff received ownership of the dog in a

state court proceeding, there is no ongoing, actual controversy that has not been remedied. Defendants argue that Count III should be dismissed because Plaintiff fails to adequately state a claim for conversion against Defendant Gist. Finally, Defendants argue that Defendant Gist is entitled to qualified immunity and absolute immunity.

## C. Magistrate Judge Cudmore's Report and Recommendation and Plaintiff's Objections Thereto

As stated, the Report and Recommendation recommends that Defendants' Motion to Dismiss be granted. Plaintiff filed Objections, in which Plaintiff disputes several of the findings in the Report and Recommendation. Plaintiff states the following objections:[1]

(1) Plaintiff disputes the finding that Count I of the Complaint fails to state a claim for deprivation of property without due process of law (Pl.'s Obj. at 2);

(2) Plaintiff disputes the finding that Defendant Gist's actions, as alleged in the Complaint, were unauthorized (Pl.'s Obj. at 2);

(3) Plaintiff disputes the finding that Plaintiff was required to allege in the Complaint that Plaintiff availed himself of post-deprivation remedies and that those remedies were not sufficient (Pl.'s Obj. at 2);

(4) Plaintiff asserts that the Report and Recommendation incorrectly states that Plaintiff believes Defendant Gist "correctly interpreted the Ordinance to authorize him to change ownership of the Dog" (Pl.'s Obj. at 3);

(5) Plaintiff objects to the Report and Recommendation to the extent that it "ap-

pears to assume that Gist's action of giving away Boomer to a third party was not a terminal event, resulting in a permanent deprivation of O'Keefe's property" (Pl.'s Obj. at 3);

(6) Plaintiff disputes the finding that *Porter v. DiBlasio*, 93 F.3d 301 (7th Cir. 1996), is distinguishable from this case and objects to "the failure of the Report and Recommendation to analyze this case pursuant to the *DiBlasio* analysis" (Pl.'s Obj. at 4);

(7) Plaintiff objects to the statement that "[a] state actor cannot give notice to someone who is unknown" because Plaintiff believes the statement suggests that Defendant Gist was not required to attempt to provide notice to Plaintiff because the Dog did not have an identification tag when it was in Defendant Gist's custody (Pl.'s Obj. at 5);

(8) Plaintiff objects to the Report and Recommendation's analysis weighing the benefit of scanning stray animals for microchips against the fiscal and administrative burden on the public. Plaintiff states that the analysis "assumes, first, that a visual inspection for ownership indicia is all that is necessary prior to the immediate termination of an ownership interest, as occurred here" (Pl.'s Obj. at 6);

(9) Plaintiff disputes the finding that "[t]he fiscal and administrative burden of requiring all municipalities to scan every stray cat and dog for microchips would outweigh the burden imposed on pet owners either to put identification tags on the animals or to use post-deprivation procedures to recover lost pets" (Pl.'s Obj. at 6–7);

---

1. These disputed findings are hereinafter collectively referred to as "Plaintiff's Disputed Findings."

(10) Plaintiff disputes the finding that a post-deprivation remedy was available and effective in this case;

(11) Plaintiff disputes the finding that Count II should be dismissed because no concrete controversy is alleged;

(12) Plaintiff disputes the finding that Count III should be dismissed for lack of subject matter jurisdiction if this Court dismisses Counts I and II.

In the Objections, Plaintiff asks this Court to reject the Report and Recommendation and grant Plaintiff leave to file an amended complaint to further allege his Fourteenth Amendment due process claim. Plaintiff also requests oral argument on his Objections and Motion to Dismiss.

## II. *ANALYSIS*

Under Rule 12(b)(6), dismissal is proper where a complaint fails to state a claim upon which relief can be granted. Fed. R.Civ.P. 12(b)(6). To state a claim upon which relief can be granted, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). That statement must be sufficient to provide the defendant with "fair notice" of the claim and its basis. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir.2008); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929, 940 (2007). This means that (1) "the complaint must describe the claim in sufficient detail to give the defendant 'fair notice of what the ... claim is and the grounds upon which it rests" and (2) its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a "speculative level." *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir.2007). While detailed factual allegations are not needed, a "formulaic recitation of a cause of action's elements will not do." *Twombly*,

550 U.S. at 555, 127 S.Ct. at 1965, 167 L.Ed.2d at 940. Conclusory allegations are "not entitled to be assumed true." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1951, 173 L.Ed.2d 868, 885 (2009) (citing *Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "In ruling on Rule 12(b)(6) motions, the court must treat all well-pleaded allegations as true and draw all inferences in favor of the non-moving party." *In re marchFIRST Inc.*, 589 F.3d 901, 904 (7th Cir.2009) (citing *Tamayo*, 526 F.3d at 1081).

As stated, Plaintiff disputes several specific findings of the Report and Recommendation. However, Plaintiff has only provided argument and supporting authority for the following four objections, all of which relate to Count I: (1) Plaintiff disputes the finding that *Porter v. DiBlasio*, 93 F.3d 301 (7th Cir.1996), is distinguishable from this case on the issue of whether Defendant Gist was required to scan the dog for a microchip before concluding that the dog's owner was unknown; (2) Plaintiff objects to the statement that "[a] state actor cannot give notice to someone who is unknown"; (3) Plaintiff asserts that the Report and Recommendation incorrectly assumes that visual inspection for indicia of ownership is all that is required before an official may terminate an ownership interest; and (4) Plaintiff disputes the finding that a post-deprivation remedy was available and effective in this case. The Court addresses each of these arguments below.

### A. Plaintiff's Complaint Fails to State a Claim for Violation of Due Process (Count I)

In Count I, Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 and alleges that Defendants violated Plaintiff's due process rights when Defendant Gist gave Plaintiff's dog to Hagan without a hearing

and without Plaintiff's consent. All of Plaintiff's supported objections dispute the Report and Recommendation's conclusion that Plaintiff has failed to state a claim for violation of due process.

■ In order to state a claim for violation of due process, a plaintiff must allege that he had a property interest, that he was deprived of that property interest, and that the deprivation was without due process of law. *Luellen v. City of E. Chicago,* 350 F.3d 604, 613 (7th Cir.2003). Here, Plaintiff was deprived of his property, his dog, from roughly July 2009 to December 2010. Therefore, the remaining issue is whether Plaintiff was denied that property without due process of law.

■ "The presumption is that an individual is entitled to notice and an opportunity for a hearing prior to the state's permanent deprivation of his property interest." *Porter,* 93 F.3d at 305 (citing *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 434, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982)). However, an individual is not entitled to a pre-deprivation hearing in all circumstances. *Porter,* 93 F.3d at 305. "In some circumstances ... a postdeprivation hearing or a common-law-tort remedy satisfies due process." *Tucker v. Williams,* 682 F.3d 654, 660 (7th Cir.2012) (citing *Zinermon v. Burch,* 494 U.S. 113, 127, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990)). "When a predeprivation hearing is not required, due process only requires that the government provide meaningful procedures to remedy erroneous deprivations." *Tucker,* 682 F.3d at 661 (citing *Parratt v. Taylor,* 451 U.S. 527, 541, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)).

■ In determining what process satisfies due process, " 'the Supreme Court has distinguished between (a) claims based on established state procedures and (b) claims based on random, unauthorized acts by state employees.' " *Leavell v. Ill. Dept. of Natural Res.,* 600 F.3d 798, 804 (7th Cir. 2010) (quoting *Rivera–Powell v. New York City Bd. of Elections,* 470 F.3d 458, 465 (2d Cir.2006)). Where the deprivation is pursuant to an established state procedure, " 'the state can predict when it will occur and is in the position to provide a pre-deprivation hearing.' " *Leavell,* 600 F.3d at 805 (quoting *Rivera–Powell,* 470 F.3d at 465). However, where the deprivation is random and unauthorized, a post-deprivation hearing or a common-law tort remedy for wrongful deprivation satisfies procedural due process requirements. *Zinermon,* 494 U.S. at 128, 110 S.Ct. 975. In such cases, "the plaintiff must either avail herself of state post-deprivation remedies 'or demonstrate that the available remedies are inadequate.' " *Leavell,* 600 F.3d at 805 (quoting *Doherty v. City of Chicago,* 75 F.3d 318, 323 (7th Cir.1996)).

This Court agrees with the Report and Recommendation's conclusion that Count I fails to state a claim for violation of due process. Defendant Gist's action—giving the dog to Hagan—was unauthorized under the Ordinance. The Ordinance requires that stray dogs be impounded. *See* Ordinance, § 3–2–8(A) (requiring officers of the Police Department "to take up and impound in such place as may be designated and set apart for that purpose, any dog found running at large or unlicensed in the City, contrary to any of the provisions of this Chapter or other regulations of the City or State"). The Ordinance directs that "where the owner or keeper of such dog is disclosed by any tax or license tag worn by it or is otherwise known to the officers impounding the same, the designated official shall make reasonable attempts to contact the owner" of the dog. Ordinance, § 3–2–9. Instead of turning over the dog to the Pound, Defendant Gist attempted to investigate the identity of the dog's owner on his own. Defendant Gist

learned that a woman named Laurent had found the dog several weeks earlier but had then given the dog to a second woman named Lewis. Lewis had given the dog to a third person, but the dog had escaped from the possession of the third person shortly before Defendant Gist found the dog. After speaking with Defendant Gist about the dog, Lewis relinquished possession of the dog to Defendant Gist. The Ordinance provides that unwanted animals "should be delivered to the County Animal Control Facility for proper disposal." *See* Ordinance, § 3–1–6. Instead of delivering the dog to Macoupin County Animal Control or having the dog impounded, Defendant Gist took the dog to Girard police headquarters. Defendant Gist thereafter gave the dog to Hagan, who had expressed interest in becoming the owner of the dog. Based on these alleged facts, this Court finds that Defendant Gist's actions were unauthorized under the Ordinance.

Because Defendant Gist's actions were unauthorized, Plaintiff, in order to state a claim for a violation of due process, is required to allege that Plaintiff availed himself of post-deprivation remedies, including common-law judicial remedies, and that those remedies were not adequate. *See Leavell,* 600 F.3d at 802 (stating that, where the deprivation is random and unauthorized, post-deprivation procedures may be adequate); *Tucker,* 682 F.3d at 660 (stating that, in some circumstances, "a postdeprivation hearing or a common-law-tort remedy satisfies due process").

However, Plaintiff cannot allege that post-deprivation remedies were not adequate because Plaintiff received full relief from an action in state court. Courts have established that, where a pre-deprivation hearing is not required, common-law judicial remedies provide adequate post-deprivation procedures. *See Tucker,* 682 F.3d at 661 (finding that adequate post-depriva-

tion procedures were available to the plaintiff because the plaintiff could have brought a claim for conversion or replevin); *Stewart v. McGinnis,* 5 F.3d 1031, 1036 (7th Cir.1993) (finding that Illinois tort laws were adequate post-deprivation procedures). Here, Plaintiff brought a replevin action in Macoupin County Circuit Court and, in March 2010, that court issued an Order of Replevin directing that the dog be returned to Plaintiff during the pendency of the state court action. In December 2010, the court awarded Plaintiff full ownership of the dog. This Court finds that Plaintiff therefore received full post-deprivation relief through that state court action. Accordingly, Plaintiff has failed to state a claim for violation of due process.

This Court also agrees with Magistrate Judge Cudmore's alternative conclusion that Plaintiff has failed to state a claim for violation of due process even if this Court were to consider Defendant Gist's actions to have been authorized by an unwritten policy or custom of the Girard Police Department that misinterpreted the Ordinance, as Plaintiff contends. This Court finds that, even if Defendant Gist's actions had been authorized, Plaintiff was not entitled to a pre-deprivation hearing under the circumstances of this case. As previously stated, "an individual is entitled to notice and an opportunity for a hearing prior to the state's permanent deprivation of his property interest." *Porter,* 93 F.3d at 305 (citing *Logan,* 455 U.S. at 434, 102 S.Ct. 1148). However, a pre-deprivation hearing is not always required. *Porter,* 93 F.3d at 305. In order to determine whether a pre-deprivation hearing is required, courts must consider the following three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of

such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *Mathews*, 424 U.S. at 335, 96 S.Ct. 893. "The test for due process in the sense of procedural minima, as set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), requires a comparison of the costs and benefits of whatever procedure the plaintiff contends is required." *Van Harken v. City of Chicago*, 103 F.3d 1346, 1351 (7th Cir.1997).

In this case, when Defendant Gist took lawful possession of the dog, he did not know who the owner of the dog was. The dog was not wearing an identification tag and was not otherwise identifiable through visual inspection. Therefore, pre-deprivation notice to Plaintiff was not possible given that Defendant Gist did not know that Plaintiff was the owner of the dog. *Wall v. City of Brookfield*, 406 F.3d 458, 459 (7th Cir.2005) (finding that post-deprivation remedies were adequate where notice was not possible). This Court agrees with Magistrate Judge Cudmore that due process did not require Defendant Gist to scan the dog for a microchip before concluding that the owner of the dog was unknown. Requiring all municipalities to scan every stray dog for a microchip would create fiscal and administrative burdens that would outweigh the burden on pet owners to place identification tags on their pets or else rely on post-deprivation remedies to recover their lost pets. *See Mathews*, 424 U.S. at 335, 96 S.Ct. 893 (stating that the court should consider "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail").

Here, Girard does not have a scanner. In order to scan the dog for a microchip, Defendant Gist would have had to leave Girard and travel to a different city that is in possession of a scanner or arrange a scan with a private veterinarian in possession of a scanner.

This Court concludes that Defendant Gist's visual inspection of the dog was sufficient to conclude that the owner of the dog was unknown. Because notice to Plaintiff was not possible, post-deprivation proceedings were adequate to provide Plaintiff with due process in this case.

Plaintiff's first three supported objections dispute Magistrate Judge Cudmore's alternative finding that, even if Defendant Gist's actions had been authorized, Plaintiff was not entitled to a pre-deprivation hearing because Defendant Gist could not have provided pre-deprivation notice to the unknown owner of the dog. Plaintiff argues that due process required that Defendant Gist take additional steps beyond visual inspection of the dog, including scanning for a microchip, to determine the dog's owner before concluding that the owner of the dog was unknown.

Specifically, Plaintiff first disputes Magistrate Judge Cudmore's finding that *Porter v. DiBlasio*, 93 F.3d 301 (7th Cir.1996), is distinguishable from this case on the issue of what process is due prior to terminating an owner's rights in seized animals. Pl.'s Obj. 4 (citing Report and Rec. 15–16). This Court agrees with Magistrate Judge Cudmore that *Porter* is distinguishable from this case. In *Porter*, county officials seized nine horses that belonged to the plaintiff and terminated the plaintiff's interest in those horses without giving notice to the plaintiff, even though the officials possessed documents that demonstrated the plaintiff's ownership of the horses. 93 F.3d at 303. In *Porter*, the Seventh Cir-

cuit considered what process was due prior to terminating the owner's rights in the seized horses. *Id.* at 306. The court applied the three-prong *Mathews* balancing test and concluded that the state was required to provide the owner notice and an opportunity to be heard prior to permanently terminating the owner's interest in the seized animals. *Porter,* 93 F.3d at 307.

The court in *Porter* did not address the constitutional obligations of an official where, as here, the official has no actual knowledge of the owner's identity. The court also did not address the issue of whether the United States Constitution requires state and municipal officials to scan seized animals for microchips. Therefore, *Porter* is distinguishable from the present case. In this case, because the identity of the dog's owner was unknown to Defendant Gist, Gist could not give notice to the dog's owner. Because pre-deprivation notice to Plaintiff was not feasible, post-deprivation procedures were adequate to provide Plaintiff with due process. *See Wall,* 406 F.3d at 459 (finding that post-deprivation remedies for the seizure of the plaintiff's dog were adequate where pre-deprivation notice was not feasible).

Next, Plaintiff disputes the Report and Recommendation's statement that "[a] state actor cannot give notice to someone who is unknown" (Pl.'s Obj. 5 (citing Report and Rec. 14)). Plaintiff believes this statement incorrectly suggests that Defendant Gist was not required to attempt to provide pre-deprivation notice to Plaintiff because the dog did not wear an identification tag when it was in Defendant Gist's custody. Plaintiff's objection to this statement is overruled. This Court agrees with Magistrate Judge Cudmore that, if an official does not know who the owner of a seized animal is, then the official cannot give notice to that owner.

Plaintiff further argues that Defendant Gist was required to take additional "reasonable steps" to notify the true owner of the dog before concluding the dog's owner was unknown. In support, Plaintiff cites Section 5(c) of the Animal Control Act, 510 ILCS 5/5(c), which obligates "municipal police officers [to] cooperate" with carrying out that statute, and Section 10 of the same Act, 510 ILCS 5/10, which requires that the County Animal Control Officer scan an impounded animal for a microchip. Plaintiff also argues that the Report and Recommendation, in its analysis of "benefits and burdens," incorrectly "assumes, first, that a visual inspection for ownership indicia is all that is necessary prior to the immediate termination of an ownership interest, as occurred here." Pl.'s Obj. 6–7 (citing Report and Rec. 16–17). Additionally, Plaintiff objects to the Report and Recommendation's analysis of whether the Constitution requires state and municipal officers to scan seized animals for microchips.

This Court has agreed with Magistrate Judge Cudmore that Defendant Gist was not constitutionally required to scan the dog for a microchip before concluding that the owner was unknown. If visual inspection of the animal does not reveal the dog's owner, then effective post-deprivation proceedings are sufficient. Plaintiff has not provided authority to support the contention that due process requires all municipal officials to scan stray dogs for microchips. Here, Defendant Gist was unable to determine the dog's owner through visual inspection of the dog, and Plaintiff received effective post-deprivation relief.

Finally, Plaintiff disputes Magistrate Judge Cudmore's finding that a post-deprivation remedy was available and effective in this case. Plaintiff argues that Girard failed to provide any post-deprivation process at all. This Court disagrees. Plain-

tiff filed a replevin action in Macoupin County Circuit Court and received full ownership of his dog as a result of that action. Plaintiff availed himself of a post-deprivation remedy, and that remedy was adequate and effective.

In sum, the Court is not persuaded by any of Plaintiff's objections discussed above. The Court agrees with the reasoning of the Report and Recommendation and finds that Count I of the Complaint fails to state a claim for violation of due process.

**B. This Court's Duty to Perform De Novo Review Does Not Arise as to Plaintiff's Unsupported Objections**

■ In the Objections, Plaintiff disputes several of Magistrate Judge Cudmore's findings but does not support his objections with legal analysis or citation to authority. "*De novo* review of a magistrate judge's recommendation is required only for those portions of the recommendation for which particularized objections, accompanied by legal authority and argument in support of the objections, are made." *United States ex rel. McCall v. O'Grady,* 1995 WL 584333, at *1 (N.D.Ill. 1995) (citing 28 U.S.C. § 636(b)(1)); *see also United States v. O'Neill,* 52 F.Supp.2d 954, 967 (E.D.Wis.1999) (rejecting, without performing a *de novo* review, objections that were not supported by statutory analysis or citation to case law); *Radke's, Inc. v. Bastian,* 2011 WL 811377, at *1 (C.D.Ill.2011) ("Perfunctory and undeveloped arguments may be deemed waived and do not warrant consideration on the merits by the Court[.]"); *United States v. O'Neill,* 27 F.Supp.2d 1121, 1126 (E.D.Wis.1998) (" '[W]ithout specific reference to portions of the magistrate's decision and legal discussion on the objected portion, the district court's duty to make a *de novo* determination does not arise[.]' "

(quoting *United States v. Molinaro,* 683 F.Supp. 205, 211 (E.D.Wis.1988))); Local Rule 72.2(B) (providing that objections to a report and recommendation must be specific and accompanied by a memorandum of law in support of those objections); Local Rule 7.1(B)(1) (providing that every motion raising a question of law must be accompanied by a memorandum of law with supporting authorities upon which the party relies). While the Court does not have a duty to conduct *de novo* review of Plaintiff's Disputed Findings that Plaintiff has not supported with legal analysis or authority, the Court has nonetheless reviewed these claims and agrees with Magistrate Judge Cudmore's conclusions and reasoning in his Report and Recommendation with respect to these issues.

**CONCLUSION**

IT IS THEREFORE ORDERED that Magistrate Judge Cudmore's Report and Recommendation (d/e 21) is ADOPTED and Defendants' Motion to Dismiss (d/e 9) is GRANTED. Plaintiff's request for leave to file an amended complaint is denied. This case is CLOSED.

IT IS SO ORDERED.

***REPORT AND RECOMMENDATION***

BYRON G. CUDMORE, United States Magistrate Judge:

This matter has been referred to this Court for a Report and Recommendation on the Motion to Dismiss (d/e 9) (Motion) pending in this case. *Text Order entered February 6, 2012.* For the reasons set forth below, this Court recommends that the Motion should be ALLOWED.

*STATEMENT OF FACTS*

For purposes of the Motion, the Court must accept as true all well-pleaded factual allegations contained in the Complaint (d/

e1) and draw all inferences in the light most favorable to Plaintiff Patrick O'Keefe. *Hager v. City of West Peoria,* 84 F.3d 865, 868–69 (7th Cir.1996); *Covington Court, Ltd. v. Village of Oak Brook,* 77 F.3d 177, 178 (7th Cir.1996). Documents attached to the Complaint are part of the Complaint for all purposes. Fed.R.Civ.P. 10(c). The Court may also take judicial notice of matters of public record, such as court records, and consider those matters in resolving the Motion. *Henson v. CSC Credit Services,* 29 F.3d 280, 284 (7th Cir. 1994).

Plaintiff O'Keefe alleges that he lives in Glenarm, Sangamon County, Illinois. In or about 2004, O'Keefe bought a purebred English mastiff dog named Boomer ("Dog" or "Boomer") for about $1,500.00. O'Keefe kept the Dog as a pet at his Glenarm residence. A microchip ("Chip") with an identifying registration number was imbedded in the Dog. The Chip could be scanned to determine ownership of the Dog. O'Keefe registered the Dog and the Chip registration number with the Sangamon County, Illinois, Animal Control Office, and received a Avid MicroChip certificate dated February 22, 2005. *Complaint,* Exhibit A.

Scanners designed to read microchips have been available for use by law enforcement, animal control officers, and others. Scanners were available in Virden, Illinois, a municipality in Macoupin County, Illinois, approximately ten miles north of Defendant City of Girard, Illinois ("Girard"). Defendant Girard is also in Macoupin County, Illinois. The Macoupin County Animal Control Office also had scanners, as well as veterinarians in and around Girard. These scanners were available to Girard police officials. *Complaint,* ¶ 5.

Girard's municipal code of ordinances contained a chapter entitled "Animals." *Complaint,* Exhibit B, *Chapter 3, Animals* *(the "Ordinance").* Defendant Harold Gist was a Girard police officer authorized to enforce the Ordinance. *Complaint,* ¶¶ 6–7.

On or about June 7, 2009, the Dog escaped from O'Keefe. The Dog did not have on a collar or any identification tags. The Chip, however, was still imbedded in the Dog. On June 26, 2009, Gist received a message indicating that a lost dog was present on a Girard business property. Gist responded to the message and removed the Dog from the Girard business property because the Dog was wandering astray. *Complaint,* ¶ 10. The Court takes judicial notice that Girard is approximately fifteen to twenty miles southwest of O'Keefe's residence in Glenarm, Illinois, from which the Dog escaped.

The Ordinance provided for impoundment of dogs running at large:

3–2–8 *IMPOUNDMENT OF DOGS RUNNING AT LARGE OR UNLICENSED DOGS; CITATION OF OWNER OR KEEPER.*

(A) It shall be the duty of such employees and officers of the Police Department as shall be designated for that purpose by the Mayor to take up and impound in such place as may be designated and set a part for that purpose, any dog found running at large or unlicensed in the City, contrary to any of the provision of this Chapter or other regulations of the City or State.

(B) When dogs are found running at large or unlicensed and their ownership is known to the designated employee(s), such dogs may be impounded at the discretion of such employee(s), but the employee(s) may cite the owner of such dog to answer charges of violation of this Chapter.

(C) Any dog permitted to run withing the City is hereby declared to be a nuisance.

(D) Any impounded dog which shall not be redeemed within **seven (7) days** shall be humanely destroyed or otherwise disposed of by the poundkeeper.

(E) The City Council may establish a reasonable fee by motion for each day that a dog is housed in the pound. **(See 510 ILCS Sec. 5/10)**

*Ordinance*, § 3–2–8 (emphasis in the original).[1] The Ordinance further provided that the officials at the City pound "shall make reasonable attempts to contact the owner, informing him of the impounding of his dog and shall cite the owner or keeper of such dog to answer charges for violation of this Chapter." Ordinance, § 3–2–9. The Ordinance further provided procedures for the owner of a dog to redeem his or her dog from the pound. *Ordinance*, § 3–2–13.

Gist did not take the Dog to be impounded. Rather, Gist put the Dog in his squad car and drove to another business to investigate to determine the identity of the Dog's owner. In the course of the investigation, Gist determined that a woman named Laurent found the Dog several weeks earlier, and gave the Dog to a second woman named Lewis. Lewis took possession of the Dog because Laurent was going to turn the Dog over to Sangamon County Animal Control. Lewis in turn gave the Dog to a third person because the Dog did not get along with Lewis' other dogs. The Dog escaped from the possession of the third person shortly before Gist picked the Dog up as a stray. Gist did not find anyone who claimed ownership of the Dog and did not attempt to scan the Dog for microchip identification. O'Keefe alleges that Gist knew that embedding registered microchips into animals was a recognized method of identifying pets. *Complaint*, ¶¶ 11–14.

Gist informed Lewis that she was the owner of the Dog pursuant to the Ordinance. The Ordinance defines "owner" as follows:

3–1–2 *DEFINITIONS*. For purposes of this Chapter, the following definitions are adopted and shall be used:

. . . .

"*OWNER* ". For purposes of this Code, the word "owner" means a person having a right of property in a dog or other animals or who keeps or harbors a dog, or who has a dog in his care, or who acts as its custodian, or who knowingly permits a dog or other domestic animal to remain on or about any premises occupied by him. **(See 510 ILCS 5/2.16)**

*Ordinance*, 3–1–2 Definitions (emphasis in the original). Gist told Lewis she would be in violation of the Ordinance unless she relinquished ownership or took appropriate care of the Dog. Lewis relinquished possession of the Dog. *Complaint*, ¶ 15. The Ordinance states that any unwanted animals "should be delivered to the County Animal Control Facility for proper disposal." *Ordinance*, § 3–1–6. Gist did not deliver the Dog to Macoupin County Animal Control or have the Dog impounded.

After Lewis relinquished her claim to the Dog, Gist took the Dog to Girard police headquarters where he was called by a person named David Hagan. Hagan told Gist he would be interested in becoming the owner of the Dog. Gist gave Hagan the Dog and stated that Hagan would be-

---

1. O'Keefe's Complaint does not allege the specific section of the Ordinance at issue. O'Keefe attached the entire Ordinance to the Complaint. The Ordinance is, therefore, part of the Complaint for all purposes. Fed. R.Civ.P. 10(c). The Court considered the entire Ordinance in evaluating the allegations in the Complaint.

come owner of the Dog pursuant to the Ordinance by feeding it and taking care of it, and so, would be responsible for any violations of the Ordinance. *Complaint,* ¶ 16.

On or about July 26, 2009, O'Keefe discovered that Hagan had possession of the Dog. O'Keefe demanded that Hagan give back the Dog, but Hagan refused. O'Keefe then commenced a replevin action against Hagan. *Memorandum of Law in Support of Motion to Dismiss (d/e 10) (Defense Memorandum),* Exhibit 1, *Verified Complaint for Replevin, Conversion, and Intentional Infliction of Emotional Distress, O'Keefe v. Hagan,* Macoupin Co. Circuit Court Case No. 09 LM 130 ("State Court Action"). In March 2010, the Macoupin County, Circuit Court issued an Order of Replevin directing the return of possession of the Dog to O'Keefe during the pendency of the State Court Action. *Defense Memorandum,* Exhibit 2, *Order of Replevin.* The Order of Replevin required O'Keefe to post a $3,000.00 bond during the pendency of the State Court Action. The Court in the State Court Action awarded O'Keefe full ownership of the Dog in December 2010, at which point the $3,000.00 bond was returned to O'Keefe. *Motion for Leave to Refile Response to Motion to Dismiss Instanter (d/e 17),* attached *Plaintiff's Brief in Response to Motion to Dismiss (Plaintiff's Response),* at 5.

Based on the allegations in the Complaint, O'Keefe alleges three counts against the Defendants. Count I alleges a claim against both Defendants for denial of property without due process. O'Keefe alleges that he had a property interest in the Dog. O'Keefe alleges that Gist did not attempt to scan the Dog to determine the owner. O'Keefe alleges Gist turned over the Dog to Hagan without notice to

O'Keefe or a hearing. O'Keefe alleges that,

> Gist's actions ... were done ... in reliance upon an official ordinance of Girard which Gist understood to decree that any person who provided food and shelter to a stray dog automatically became legal owner of that dog, without any notice to any prior owner or hearing regarding ownership rights. In accordance and consistent with that understanding, Gist unilaterally determined and decided:
>
> A. That Lewis had been Boomer's owner by virtue of having voluntarily taken possession of Boomer and providing Boomer with food and shelter;
>
> B. That Lewis, as Boomer's owner, had the right to voluntarily relinquish ownership, . . . ;
>
> C. That because Lewis had relinquished the ownership . . . , Gist was entitled to take whatever action he deemed acceptable to "adopt" Boomer out to a new owner; and
>
> D. That Gist had authority to summarily transfer the ownership of Boomer to Hagan.

*Complaint,* ¶ 23. O'Keefe alleges that Gist's actions violated his right to property without due process, and as a result, O'Keefe suffered damages. *Complaint,* ¶¶ 24–25. Count I seeks damages from both O'Keefe and Girard.

Count II seeks a declaratory judgment against Girard. O'Keefe alleges that the Girard police department interprets the Ordinance in the same manner as Gist, that, "a person can automatically become the owner of a dog, with all rights and liabilities attendant with such ownership status, merely by feeding and sheltering the dog, and without any notice to or hearing involving the prior owner." *Com-*

plaint, ¶ 29. O'Keefe asks the Court to declare that the Ordinance as interpreted and applied in this case is unconstitutional.

Count III alleges an Illinois common law claim for conversion against Gist. O'Keefe alleges that Gist lawfully obtained possession of the Dog when he picked him up wandering on a business's property in Girard. O'Keefe alleges that Gist unlawfully gave possession and purported to give ownership of the Dog to Hagan, "and thus converted O'Keefe's valuable property." *Complaint,* ¶ 37. O'Keefe alleges that he suffered damage thereby. *Complaint,* ¶ 38. The Defendants now move to dismiss the Complaint.

### *ANALYSIS*

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper where a complaint fails to state a claim on which relief can be granted. *Fed.R.Civ.P.* 12(b)(6). The Federal Rules require only "a short and plain statement of the claim showing that the pleader is entitled to relief," and allegations must be "simple, concise, and direct." *Fed.R.Civ.P.* 8(a)(2) & (d)(1). While a complaint need not contain detailed, specific factual allegations, it must contain sufficient facts to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is plausible if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). A claim is plausible on its face if it provides the defendant fair notice of what the claim is and the grounds upon which it rests. *George v. Smith,* 507 F.3d 605, 608 (7th Cir.2007). The Court addresses O'Keefe's three Counts in order.

### A. *Count I Due Process*

The Fourteenth Amendment states that no state shall deprive a person of property without due process of law. U.S. Const. Amend. XIV. To state a claim for violation of due process, O'Keefe must allege that he had a property interest, he was deprived of his property interest, and that deprivation was without due process of law. *Luellen v. City of East Chicago,* 350 F.3d 604, 613 (7th Cir.2004). O'Keefe alleges a property interest in the Dog. He alleges that he lost the Dog in June 2009, that Gist took possession of the Dog under color of law as a Girard police officer, that Gist gave the Dog to Hagan pursuant to Gist's understanding of the Ordinance in July 2009, and that Hagan refused to return the Dog to O'Keefe. The Court takes judicial notice that O'Keefe commenced the State Court Action, recovered possession of the Dog in March 2010 upon the posting of a $3,000.00 bond, and secured a judicial determination of full ownership of the Dog and a return of the bond in December 2010. O'Keefe was, thus, deprived of his property from roughly July 2009 to December 2010. The issue is whether he was denied that property without due process of law.

Due process is a flexible concept and calls for such procedural protections that the particular situation demands. *Mathews v. Eldridge,* 424 U.S. 319, 334, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). O'Keefe alleges that Gist attempted to deprive O'Keefe permanently of his property by purporting to give Hagan complete ownership of the Dog. An individual is generally entitled to notice and an opportunity for a hearing prior to such a permanent deprivation of his property interest. *Porter v. DiBlasio,* 93 F.3d 301, 305 –306 (7th Cir.1996) (citing *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 434, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982); *Goss v. Lopez,* 419 U.S. 565, 579,

95 S.Ct. 729, 42 L.Ed.2d 725 (1975)). A pre-deprivation hearing, however, is not required in all circumstances. For example, post deprivation procedures, including common law judicial remedies, may be adequate where the deprivation is random or unauthorized. *Leavell v. Illinois Dept. of Natural Resources*, 600 F.3d 798, 802 (7th Cir.2010). In such cases, the plaintiff must allege that he availed himself of the available post deprivation remedies and those remedies were not sufficient. *Id.*

In this case, Gist's actions were unauthorized. The Ordinance stated that strays running at large, such as the Dog, were to be impounded. *Ordinance*, § 3–2–8(A), quoted above. The Ordinance directed the pound officials to take reasonable steps to identify the owner of the Dog, not Gist. *Ordinance*, § 3–2–9. The Ordinance further provided that all unwanted animals should be delivered to Macoupin County Animal Control. *Ordinance*, § 3–1–6. Gist, thus, should have taken the Dog to the Girard pound to be impounded as a stray or to Macoupin County Animal Control as an unwanted animal. Gist had no authority to give the Dog to anyone. Because Gist's actions were unauthorized, O'Keefe must allege that he availed himself of post deprivation remedies and those remedies were not sufficient. *Leavell*, 600 F.3d at 802. O'Keefe cannot make such allegations. He received full relief from the State Court Action.

O'Keefe argues that Gist correctly interpreted the Ordinance to authorize him to change ownership of the Dog. O'Keefe does not identify the provision in the Ordinance on which he relies, and the Court cannot find any such provision. The Ordinance requires impoundment of stray animals. The Ordinance nowhere authorizes police officers to give a stray animal to anyone other than the City pound or Macoupin County Animal Control. *Ordinance*, §§ 3–1–6 and 3–2–8.

O'Keefe seems to imply that Gist relied on the Ordinance's definition of "owner." *Ordinance*, § 3–1–2. Section 3–1–2 is a definitions section only, not an operative section. Section 3–1–2 sets forth defined meanings for certain terms "for purposes of the Chapter," not for any other purpose. The section defines the term "owner" to identify the individuals who are responsible for the care and treatment of an animal within Girard in accordance with the operative sections of the Ordinance. The defined term "owner" is broad so that the City can hold individuals who have control over animals accountable for care and treatment of those animals. The definition is not operational and does not declare legal ownership interests in any animal. The definition merely creates a defined term for use in the Ordinance. Thus, Gist did not understand the Ordinance and did not follow the Ordinance. His actions were unauthorized by the Ordinance.

O'Keefe alleges in Count II that the Girard Police Department interpreted the Ordinance in the same manner as Gist. *Complaint*, ¶ 29. This allegation is not in Count I, but the allegation is in the Complaint and the Court should read the Complaint as a whole to determine whether it states a plausible claim. *See Triad Associates, Inc. v. Robinson*, 10 F.3d 492, 498 (7th Cir.1993). When read most favorably to O'Keefe, the alleged Girard Police Department interpretation of the Ordinance could have constituted an unwritten policy or custom of the Department. If so, then Gist's actions could have been authorized by that policy or custom. *See Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 693–94, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Calusinski v. Kruger*, 24 F.3d 931, 936 (7th Cir.1994). The Court, thus, must determine whether

Gist's alleged actions violated O'Keefe's right to due process assuming those acts were authorized by the unwritten policy or custom.

A pre-deprivation hearing is generally required before a person can be deprived of his property, but not always. *Mathews,* 424 U.S. at 335, 96 S.Ct. 893. The Supreme Court listed the relevant factors in *Mathews* to determine whether a pre-deprivation hearing is required:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest, through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews,* 424 U.S. at 335, 96 S.Ct. 893. This Court, in effect, must weigh the costs and benefits embodied in these factors to determine the "procedural minima" that due process requires. *Van Harken v. City of Chicago,* 103 F.3d 1346, 1351 (7th Cir. 1997).

In this case, Gist lawfully took possession of the Dog as a stray within the city limits of Girard. O'Keefe agrees that taking possession of the Dog as a stray was proper. *Complaint,* ¶ 36. This issue is the disposition of the Dog. Gist had no actual knowledge that O'Keefe was the true, legal owner of the Dog when he gave the Dog to Hagan. The Dog further wore no tag and bore no other visible identification marks. A state actor cannot give notice to someone who is unknown. When notice is not feasible, post deprivation procedures may be adequate. *See Wall v. City of Brookfield,* 406 F.3d 458, 459 (7th Cir.2005) (post deprivation remedies were adequate because notice was not feasible).

The issue is whether: (1) Gist was constitutionally required to scan the Dog for the Chip and then give O'Keefe notice and an opportunity for a pre-deprivation hearing before giving the Dog to Hagan; or (2) Gist's visual inspection of the Dog was constitutionally sufficient, in which case, Gist had no knowledge that O'Keefe was the true owner when he gave the Dog to Hagan, and so, notice was not feasible and effective post deprivation judicial remedies were sufficient to provide O'Keefe due process. Essentially, the issue is whether the constitution requires state and municipal officials to scan stray dogs and cats for microchips.

The cases cited by the parties are not helpful in addressing this issue. In all of the cited cases involving animals, the state or municipal officials had actual knowledge of the true owner of the animal. *Wall v. City of Brookfield,* 406 F.3d at 459 (Defendant official knew plaintiff owned the dog); *Porter v. DiBlasio,* 93 F.3d 301, 303 (7th Cir.1996) (Plaintiff called defendant official and identified himself as the true owner of horses); *Siebert v. Severino,* 256 F.3d 648, 651–52 (7th Cir.2001) (Defendants seized horses from plaintiff's possession and provided plaintiff notice of the basis for the seizure).[2] The cases do not address the constitutional obligation when the official has no actual knowledge of the owner's identity.

The Court has carefully considered the particular circumstances alleged in this

---

**2.** O'Keefe also cites *Viilo v. Eyre,* 547 F.3d 707 (7th Cir.2008). The *Viilo* case is a Fourth Amendment case, not a due process case. The Court stated that shooting a dog was a seizure for purposes of the Fourth Amendment. *Viilo,* 547 F.3d at 710. The defendants in that case shot the dog on the owner's property in the presence of the owner. *Id.* at 708–09. The case does not address the issue of an unknown owner either.

case and finds that the constitution does not require municipal and state officials to do more that conduct a visual inspection of a stray cat or dog to attempt to determine ownership. The fiscal and administrative burden of requiring all municipalities to scan every stray cat and dog for microchips would outweigh the burden imposed on pet owners either to put identification tags on the animals or to use post deprivation procedures to recover lost pets. In this case, for example, Girard does not have a scanner. Gist would have been required either to leave Girard and travel to Virden or to arrange with private veterinarians to have the Dog scanned. Either alternative would have taken Gist away from patrolling Girard's streets for some period of time. These types of burdens would become significant if municipal officials had to take such steps for every stray cat or dog found within a municipality. The Court finds that the constitution does not require municipalities to take these steps to attempt to identify stray animals. If a visual inspection of a stray dog or cat found in a municipality does not provide the identity of the owner, then the Court finds that the identity of the owner is unknown for constitutional purposes and effective post deprivation procedures are sufficient process.

O'Keefe notes that the State of Illinois and Macoupin County now require scanning stray animals for microchips. *Motion to Supplement Response to Motion to Dismiss Instanter (d/e 18)*, at 2 (citing Illinois Animal Control Act, 510 ILCS 5/5(c); and Macoupin County Animal Control Ordinance No. 2008–03, §§ 1.6(a), 1.7(a)). These are legislative acts. Legislative bodies are the appropriate representatives of the people to weigh the benefit of scanning stray animals for microchips against the financial burden on the public fisc. Constitutional due process, however, defines the "procedural minima." *Van*

*Harken*, 103 F.3d at 1351. The Court is unwilling to declare that the constitutional procedural minimum in this case requires every municipality to scan every stray cat and dog for microchips.

The Court finds that the constitution only required Gist to conduct a visual inspection of a stray dog or cat, such as the Dog, to determine the identity of the owner. When he could not determine ownership by such a visual inspection, then effective post deprivation procedures were sufficient to provide O'Keefe with due process. Those post deprivation procedures were effective here. O'Keefe recovered the Dog. Gist did not violate O'Keefe's right to due process even if Gist's actions were somehow authorized by some alleged unwritten police policy or custom that misinterpreted the Ordinance. Count I fails to state a claim.

## B. Count II Declaratory Judgment

The Declaratory Judgment Act authorizes this Court to issue declaratory judgments when there is an actual controversy between the parties over a matter within the jurisdiction of this Court. 28 U.S.C. § 2201(a). To constitute an actual controversy, the dispute must be definite and concrete, touching legal relationships of the parties such that a declaratory judgment would provide relief rather than an advisory opinion of what the law would be upon hypothetical facts. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007).

In this case, there is no concrete controversy between the parties for which a declaratory judgment would provide relief. The parties disagree on the validity of the alleged Girard Police Department interpretation of the Ordinance, but the disagreement is academic and hypothetical at this point. O'Keefe has the Dog back and is not subject to the laws of Girard because

he does not live in Girard. The declaratory judgment would only provide relief if O'Keefe continued his practice of not placing identifying tags on the Dog, the Dog again escaped, the Dog again traveled fifteen to twenty miles to Girard, and Girard police officials again picked up the Dog as a stray. The possibility of this chain of events happening again is clearly remote and hypothetical. This Court is not authorized to provide advisory opinions on what should happen in such hypothetical circumstances. Declaratory relief, therefore, is not appropriate. Count II fails to state a claim.

## C. Count III Conversion

Count III is a state common law supplemental claim for conversion. This Court should decline to exercise jurisdiction over this claim because O'Keefe fails to state a valid federal claim. 28 U.S.C. § 1367(c)(3); *Van Harken,* 103 F.3d at 1354.

WHEREFORE, the Court recommends that Defendants' Motion to Dismiss (d/e 9) should be ALLOWED. The claims in Counts I and II should be dismissed with prejudice and the claims in Count III should be dismissed for lack of subject matter jurisdiction.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk of the Court within fourteen days after service of an ECF copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file a timely objection will constitute a waiver of objections on appeal. *See Video Views, Inc. v. Studio 21, Ltd.,* 797 F.2d 538, 539 (7th Cir.1986). *See Local Rule* 72.2.

February 21, 2012